## LOUISVILLE & N. R. CO. v. DICKERSON.

(Circuit Court of Appeals, Sixth Circuit.   November 7, 1911.)

No. 2,127.

1. CARRIERS (§ 35*)—INTERSTATE COMMERCE ACT—RATES—CONTRACTS IN VIOLATION OF STATUTE.

Under Interstate Commerce Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380 (U. S. Comp. St. 1901, p. 3156), as amended by Act June 29, 1906, c. 3591, § 2, 34 Stat. 586 (U. S. Comp. St. Supp. 1909, p. 1153), which requires connecting railroads which have established through routes and joint rates to file and publish schedules showing the same. and also showing all terminal and other charges, "any rules or regulations which in any wise change, affect or determine any part or the aggregate of such aforesaid rates, fares and charges," routes and rates so established become a matter of public right and a stipulation in a bill of lading for a greater or less rate or permitting the carrier to make a different routing under conditions not provided for in the schedules, by which the cost to the shipper is affected, is void, and affords no defense to an action by the shipper to recover a sum exacted in excess of the schedule rate.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 35.*]

2. CARRIERS (§ 30*)—INTERSTATE RATES—DIVERSION OF SHIPMENT.

A railroad company which as initial carrier received an interstate shipment to be transported over its own and other lines under a joint through rate established and filed was not authorized to divert the shipment to another road, not a party to the joint rate, because its connecting carrier refused to receive it, and is liable to the shipper for the excess of freight charged resulting from such diversion.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 30.*]

3. COMMERCE (§ 87*)—INTERSTATE COMMERCE COMMISSION—COMPLAINTS FOR DAMAGES—LIMITATION.

Under Interstate Commerce Act Feb. 4, 1887, c. 104, § 16, 24 Stat. 384 (U. S. Comp. St. 1901, p. 3165), as amended by Act June 29, 1906, c. 3591, § 5, 34 Stat. 590 (U. S. Comp. St. Supp. 1909, p. 1159), which pro-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

vides that all complaints for damages shall be filed with the Interstate Commerce Commission within two years from the time the cause of action accrues, a letter to the commission setting out the facts and containing a substantial prayer for relief by way of damages is a sufficient complaint; no formal pleadings being required by the act.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 87.*]

4. COMMERCE (§ 87*)—INTERSTATE COMMERCE COMMISSION—COMPLAINTS FOR DAMAGES—LIMITATION.

Interstate Commerce Act Feb. 4, 1887, c. 104, § 16, 24 Stat. 384 (U. S. Comp. St. 1901, p. 3165), as amended by Act June 29, 1906, c. 3591, § 5, 34 Stat. 590 (U. S. Comp. St. Supp. 1909, p. 1159), provides that "all complaints for the recovery of damages shall be filed with the commission within two years from the time the cause of action accrues and not after, * * * Provided that claims accrued prior to the passage of this act may be presented within one year." *Held,* that a claim which accrued prior to the passage of the act might be presented at any time within two years after the date of its accrual, although more than a year had elapsed after the passage of the act.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 87.*]

5. COSTS (§ 252*)—INTERSTATE COMMERCE COMMISSION—SUIT TO ENFORCE ORDER FOR PAYMENT OF MONEY—ATTORNEY'S FEE.

Under Interstate Commerce Act Feb. 4, 1887, c. 104, § 16, 24 Stat. 384 (U. S. Comp. St. 1901, p. 3165), as amended by Act June 29, 1906, c. 3591, § 5, 34 Stat. 590 (U. S. Comp. St. Supp. 1909, p. 1159), which provides that in a suit to enforce compliance with an order for the payment of money made by the Interstate Commerce Commission, if the petitioner shall finally prevail, he shall be allowed a reasonable attorney's fee to be taxed as a part of the costs, where a railroad company brings error to review the judgment in such a suit, which is affirmed, an allowance of attorney's fees on account of the appellate proceedings may properly be made in addition to that made by the trial court.

[Ed. Note.—For other cases, see Costs, Dec. Dig. § 252.*]

In Error to the Circuit Court of the United States for the Southern District of Ohio.

Action by Edward S. Dickerson, trading as Woodward & Dickerson, against the Louisville & Nashville Railroad Company. Judgment for plaintiff (187 Fed. 874), and defendant brings error. Affirmed.

The defendant in error (hereinafter called the plaintiff) filed his petition in the court below as commencement of suit against the plaintiff in error (as defendant therein); the cause of action being stated substantially as follows:

That the defendant, being a common carrier of passengers and property by railroad between points in Tennessee and Pennsylvania and the lines of other carriers connecting with it, and so subject to the provisions of the interstate commerce act, published and made effective a tariff of freight rates thereunder, naming $3.45 per gross ton as the rate on crude phosphate rock in car load lots from St. Blaise, Tenn., to Riddlesburg, Pa., by way of Cincinnati, Ohio, the Pennsylvania Railroad Company and the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company being named therein as parties to said tariff and acquiescing and concurring in the same as published by the defendant; that while said tariff was in force the plaintiff delivered to defendant at St. Blaise, Tenn., on each of two separate dates a car containing such phosphate rock for shipment to Riddlesburg, Pa., consigned to plaintiff in care of the Huntington & Broad Top Mountain Railroad & Coal Company, at the aforesaid tariff rate, which was noted on the bills of lading of the respective cars; that defendant hauled the shipments to Cincinnati over its own line, and there delivered the same, without plaintiff's con-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sent or knowledge, to the Baltimore & Ohio Southwestern Railroad Company, which was not a party to said tariff, and that upon the delivery to plaintiff of the said consignments at Riddlesburg the Huntington & Broad Top Mountain Railroad & Coal Company, instead of collecting the legal rate published and noted upon the bills of lading, exacted and collected from plaintiff sums aggregating $154.81 in excess of the published rate, said excess charges being alleged to be in violation of the interstate commerce act; that plaintiff unsuccessfully demanded of each of the railroad companies which were parties to the tariff, as well as those taking part in the transportation, a refund of the excess charges; that plaintiff accordingly invoked the aid of the interstate Commerce Commission; that the several carriers appeared and defended, and that the commission made an order authorizing and directing the defendant on or before a fixed date to pay to plaintiff $154.81, with interest, as reparation for the misrouting or diversion of the shipments in question; that the defendant's petition for rehearing was denied by the commission; that defendant has failed and refused to comply with the order of the commission, to enforce which, together with interest and attorney's fee, this suit was instituted. The defendant answered, stating, in substance, sufficient for the purpose of this opinion; that its line terminates at Cincinnati; and that, in order that said cars reach Riddlesburg by way of the joint through rate, they would have to be turned over at Cincinnati to the Pittsburgh, Cincinnati, Chicago & St. Louis Railway, and that defendant intended so to do, but that it was unable to make such delivery because the latter road, when offered the cars, would not and could not receive and transport them by reason of the congestion of traffic thereon; that defendant was thus forced either to indefinitely hold said cars, together with a large amount of other business, in its yards and terminals at Cincinnati until the Pittsburgh, Cincinnati, Chicago & St. Louis Railway should at some indefinite and remote date accept the same, or to forward the same over other roads; that by reason of the movement at that time of an extraordinary volume of traffic defendant's holding the cars in question would have resulted in a congestion and blockade of its own line and facilities; that the situation thus permitted no delay, and that, in view of its obligation to keep its own line open and capable of rendering prompt and efficient service to the public, defendant accordingly made delivery to the Baltimore & Ohio Southwestern Railway Company, on being advised by the latter that it could handle said cars, at the same time furnishing to the latter company complete information with respect to rates, route, consignee, and destination; that the latter company forwarded the cars over its own line and the lines of its connecting carriers to Riddlesburg, Pa., where delivery was made, and collection from the plaintiff had, by the Huntington & Broad Top Mountain Railroad & Coal Company; that each of the bills of lading contained the following provision: "Every carrier shall have the right, in case of necessity, to forward said property by any carrier between the point of shipment and the point to which the rate is given. All additional risks and increased expenses incurred by reason of change of route in case of necessity shall be borne by the owner of the goods and be a lien thereon"—that the facts pleaded made out a case of necessity within the meaning of the provision quoted; and that in so changing the route of the shipments under the existing conditions defendant acted within its rights and in the best interests of the plaintiff and the shipping public as a whole, and that the additional expense caused by said diversion should be borne by the plaintiff. Defendant also presented the defense that plaintiff's claim was barred by the limitation imposed by the interstate commerce act, in that the claim was not presented to the commission until more than two years after the taking effect of the act, and until more than two years from the time the claims for reparation accrued; also, that the claim accrued prior to the passage of the act and was not presented within the one year after the act became a law. The plaintiff demurred to the defense other than the statute of limitations as insufficient in law on its face, and as to the latter defense replied that on a date named, which was less than two years after the taking effect of the act on August 28, 1906, he filed with the commission a written communication asking the commission's support in his efforts to collect the excessive freight charges; afterwards, but not with-

in the two-year period, filing his formal complaint with the commission, to which the defendant appeared and answered, with the result set up in the petition. The defendant demurred to this reply as insufficient in law on its face. The Circuit Court sustained plaintiff's demurrer to defendant's answer, and overruled defendant's demurrer to plaintiff's reply; and, the cause being submitted upon pleadings and demurrers, judgment was entered for the plaintiff for the amount of said excess charges, with interest, together with $200 attorney's fee. The correctness of the court's action with reference to the respective demurrers, and in rendering judgment for the plaintiff, both for money damages and for attorney's fee, is challenged by the assignments of error.

E. G. Kinkead (Wm. G. Dearing and Kinkead & Rogers, on the brief), for plaintiff in error.

F. O. Suire (Thompson & Van Sant, on the brief), for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge (after stating the facts as above). [1] 1. The Right of Action. In our opinion the only theory on which this suit is maintainable is that the defendant, having accepted the shipments under established tariff rates and over a specified route, is obligated to carry the goods at the rate and over the route specified, and that, having diverted the freight at Cincinnati to a different route, it is liable for the damages thereby occasioned to the plaintiff, viz., the difference between the lawfully established tariff over the specified route and the charges incurred by reason of the change of route. Section 6 of the interstate commerce act (34 St. L. 586) requires that the tariff schedules, in addition to stating the rates and the routes covered thereby—

"shall also state separately all terminal charges, storage charges, icing charges, and all other charges which the commission may require, all privileges or facilities granted or allowed and any rules or regulations which in any wise affect, or determine any part or the aggregate of such aforesaid rates, fares and charges, or the value of the service rendered to the passenger, shipper or consignee."

The Interstate Commerce Commission, speaking through Commissioner Lane, sustained the plaintiff's right to reparation on the theory above stated, holding that the provision for diversion contained in the bill of lading was ineffective because not contained in the defendant's tariff schedules, as being a regulation affecting tariff charges. The views of the commission were expressed in this language:

"The Louisville & Nashville made a joint arrangement with other carriers for the transportation of phosphate rock from St. Blaise, Tenn., to Riddlesburg. Pa., and published that rate as its rate. The rate was a unit and the route was a unit. In its tariffs the Louisville & Nashville did not reserve the right of diversion to any other route over which a higher rate would necessarily and legally be applicable. To be sure a provision in its bill of lading attempted to do this, but such provision, being outside its tariff announcement, was in no sense a limitation upon the right of the shipper to have his commodity transported in the manner and at the rate specified in the rate schedule. Baltimore & Ohio Railroad v. Hamburger [C. C.] 155 Fed. 849.

It is no longer strictly correct to speak of the contract of shipment and the bill of lading as evidencing the terms of such contract, for under a govermental-prescribed system of publishing rates a carrier is not free to contract with respect to the rate, but is required by law to perform a service for the public under the tariffs of charges and regulations, which, though furnished by it, are legally enforceable, not by reason of any contract, but by virtue of the legal prescription. To say, therefore, that a carrier in diverting a shipment from a route which it has made under sanction of the law is only liable for breach of contract, and that in a court of law, is to gravely misconstrue the purport of the act to regulate commerce. This statute commands that carriers shall provide for certain transportation and shall make public the rates applicable thereto, and that the carrier who omits to do what is required to be done shall be liable to the person injured for the full amount of the damages sustained. The Louisville & Nashville Railroad failed to furnish the transportation it held itself out to give at the rate which it announced, and for this failure the shipper is entitled to the damage which he suffered, the difference between the amounts imposed by the carriers upon the shipment made and the legally published joint rate which would have been applied had the shipment moved over the through route established by the Louisville & Nashville and its connections." Woodward & Dickerson v. L. & N. R. Co., 15 Interst. Com. Com'n R. 170, 172.

Aside from this opinion of the commission, the only direct adjudication we have found is in the case of B. & O. R. R. Co. v. Hamburger, cited in the commission's opinion. In that case it was held by District Judge Waddill that, under the requirement of the act which we have quoted above that the published schedules "show all privileges or facilities granted or allowed," a provision in a passenger's ticket sold by the railroad company, making it nontransferable, where no such limitation is shown in the company's schedules, is unlawful and void. Having in mind the purpose and effect of the act, we are constrained to agree with the interpretation adopted by the commission.

By section 6 of the act provision is made for concurrence (by the carriers named therein as parties thereto) in the tariff filed by any carrier, and the charging of any greater or less rates than named in the tariffs filed is forbidden (34 St. L. 586). By section 15 the commission is authorized, on complaint made, to establish through routes and joint rates when necessary for the protection of shippers against the failure of carriers to establish such routes and rates, as well as the terms and conditions upon which such through routes shall be operated (34 St. L. 590). The route so established, whether by the commission or by the voluntary act of the carriers, becomes a unit, and the rate is likewise unitary. Pacific Purchasing Co. v. C. & N. W. Ry. Co., 12 Interst. Com. Com'n R. 549, 552.

The cardinal purpose of the provisions for the public establishment of tariff rates is to secure uniformity, reasonableness, and certainty of charges for services. A rate once regularly published is no longer merely the rate imposed by the carrier, but becomes the rate imposed by law; and routes and rates once so established become matter of public right and forbid private contract inconsistent therewith. It results that, under the commerce act, a stipulation in a bill of lading for a rate greater or less than the published tariff is void. Gulf, Colorado & S. F. Ry. Co. v. Hefley, 158 U. S. 98, 102, 15 Sup. Ct. 802, 39 L. Ed. 910; Texas & Pacific Ry. Co. v. Mugg,

202 U. S. 242, 245, 26 Sup. Ct. 628, 50 L. Ed. 1011; Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553; Poor v. Chicago, B. & Q. Ry. Co., 12 Interst. Com. Com'n R. 418; Carstens' Packing Co. v. B. A. & P. R. Co., 15 Interst. Com. Com'n R. 432. By the establishment of the tariff in question the defendant became obligated to the public to transport over the route and at the rate established. It seeks to escape liability for breach of this obligation by setting up a private agreement or regulation which, by way of limitation upon its public liability, directly affects the cost to the shipper of the carriage between the place of shipment and the place of consignment. This we think it was not competent for defendant to do. To so permit would be to open the door to evasions of public duty. It seems clear that the regulation in question immediately affected the rates for shipment between the points indicated. It directly increased the lawfully established and agreed compensation for the carriage. A regulation having such effect is required to appear in the defendant's tariff, and not so appearing is ineffective. It is of interest to note that in Southern Pacific Co. v. Interstate Commerce Commission, 200 U. S. 536, 26 Sup. Ct. 330, 50 L. Ed. 585, a provision allowing the initial carrier to route traffic was contained in the published tariffs. Attention is also called to certain holdings of the Interstate Commerce Commission stating the necessity of including in the tariffs certain rules there in question. Springer v. El Paso & Southwestern R. Co., 17 Interst. Com. Com'n R. 322, 323, and cases there cited.

The bill of lading provision being thus ineffective, it is immaterial that the roads over which the diverted shipments were carried had the right, in the absence of an established joint rate, to charge their local tariff rates. In the view we have taken of the case, we are not called upon to interpret the term "necessity" in the bill of lading provision.

[2] The authority invoked for the diversion of route having failed, we think plaintiff is entitled to recover from the defendant. Indeed, it does not seem to be strongly urged that defendant is not liable, provided the clause in the bill of lading is held ineffective. Under the theory upon which we have held recovery permissible, the defendant is liable for the entire damage suffered by the plaintiff, not only because the defendant was the carrier which made the contract and thus became liable for at least its own acts, but because its act in making delivery to the Baltimore & Ohio Southwestern Railroad Company accomplished the diversion, and was thus the direct cause of plaintiff's damage. True, the defendant offered the shipments to the connecting carrier which was a joint party to the established route and rate in question; but the latter's refusal to perform its contract furnished no authority to make the diversion complained of. It is thus unnecessary to predicate defendant's liability on the breach of duty on the part of the connecting carrier, or to consider the question of the latter's liability.

It is alleged that plaintiff's damages by reason of the diversion were occasioned because of rule 70 of the Commission, which declares that "the lawful charge on any shipment is the tariff rate via the route over

which the shipment moved. No carrier can lawfully refund any part of the lawful charge except under authority so to do from the commission or from a court of competent jurisdiction," and that this rule thus forbade the carriers of the diverted shipments to "protect" the joint through rate. This rule is criticised as an arbitrary, unreasonable, and unlawful restraint upon interstate commerce. It would seem enough to say in this connection that defendant cannot well have been prejudiced by this rule, not only because for more than a year after the diversions occurred and the damages accrued the rule was not in effect, but also because the rule does not forbid such refund by authority of the commission, and it does not appear that the commission was seasonably or ever applied to for such authority. We do not, however, mean to be understood as questioning the propriety of the rule criticised.

[3] 2. The Statute of Limitations. Section 16 of the interstate commerce act (34 St. L. 590) provides that:

"All complaints for the recovery of damages shall be filed with the commission within two years from the time the cause of action accrues, and not after: * * * Provided that claims accrued prior to the passage of this act may be presented within one year."

The freight was paid and the claim for reparation accrued December 26, 1905. The section above quoted took effect August 28, 1906. Nicola, Stone & Myers Co. v. Louisville & N. R. Co., 14 Interst. Com. Com'n R., p. 206. September 5, 1907, plaintiff applied to the commission for its "support in our efforts to collect" the excess freight charged, setting out the transaction and plaintiff's grievance. Section 13 of the act (24 St. L. 384) provides that any one complaining of an act by a common carrier in contravention of the provisions of the act "may apply to said commission by petition, which shall briefly state the facts; whereupon a statement of the charges thus made shall be forwarded by the commission to such common carrier, who shall be called upon to satisfy the complaint or to answer the same in writing within a reasonable time, to be specified by the commission."

The form of the petition is not prescribed, except in the general language above quoted. The plaintiff's reply to defendant's answer says with reference to this communication of September 5, 1907:

"Thereafter due notice was given to said defendant, and on September 8, 1908, he filed his formal complaint with said commission, etc."

[4] The commission held the original communication a sufficient complaint (15 Interst. Com. Com'n R. 170, 172), and we think correctly. It was sufficient to inform the defendant of plaintiff's grievance. Formality was not required. In passing upon the question of the statute of limitations the commission followed its ruling in Nicola, Stone & Myers Co. v. L. & N. R. Co., 14 Interst. Com. Com'n R. 199, 206, where it was held that any claim accruing before or after August 28, 1906, may be presented within two years from the time it accrued, and that claims accruing before August 28, 1906, may be presented within one year from that date, even though accruing more

than two years previous to 'the date named. Woodward & Dickerson v. L. & N. R. R. Co., 15 Interst. Com. Com'n R. 170, 172; same case on rehearing, 17 Interst. Com. Com'n R. 9. We think this the correct construction of the statute, and that the claim was accordingly not barred.

[5] 3. Attorney's Fee. Section 16 (34 St. L. 590) provides that, if in a suit against a common carrier to compel compliance with an order for the payment of money "the petitioner shall finally prevail, he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit." Plaintiff asks an allowance on account of the appellate proceedings, in addition to the allowance made by the Circuit Court. We think it is competent to make such additional allowance if the case is brought within the commerce act. Defendant contends it is not so brought, on the ground that the diversion was not a violation of any section of the act, on the authority of Atlantic Coast Line R. Co. v. Riverside Mills, 219 U. S. 186, 208, 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7. We think the authority cited does not apply to this case. There the action was against an initial carrier for the loss of goods by a connecting carrier. The attorney fee was claimed under section 8 of the act (24 St. L. 382), which provides therefor in case of recovery against a carrier for doing anything prohibited or declared unlawful by the act, or omitting to do anything required thereby. The damage claim was held not to be in consequence of a violation of the interstate commerce act. Here, as already said, the attorney fee is provided by section 16 in a suit for the reparation awarded by the commission.

We think the case is brought directly within section 16, and that the plaintiff should be allowed $100 additional attorney's fee on account of the proceedings under appeal to this court.

The judgment of the Circuit Court is affirmed, with costs, including the allowance stated.