A. J. PHILLIPS CO. v. GRAND TRUNK WESTERN RY. CO. et al.

(Circuit Court of Appeals, Sixth Circuit. March 13, 1912.)

No. 2,168.

1. COURTS (§ 405*)—FEDERAL COURTS—JURISDICTION.

Where by demurrer to a declaration in a suit against certain carriers for reparation, defendants sought to raise the question whether it was necessary as a condition precedent to the jurisdiction of the Circuit Court that the declaration allege that an order had previously been made by the Interstate Commerce Commission finding that the particular freight rate in dispute was unreasonable, fixing the amount of plaintiff's damages, and awarding reparation, such objection constituted a challenge on principles of general law concerning the right of the Circuit Court to entertain the action, and was not a challenge of the court's jurisdiction as a federal court; the question whether the allegations touching such previous action of the interstate commerce commission were sufficient in law to entitle plaintiff to maintain his suit being one which the Circuit Court could rightfully consider and determine, and that the Circuit Court of Appeals can review.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1097–1099, 1101, 1103; Dec. Dig. § 405.*]

2. COURTS (§ 405*)—COURT TO WHICH PROCEEDINGS IN ERROR ARE TAKEN—ELECTION.

Where a demurrer to a declaration presented a question on the merits as well as one of jurisdiction, the defeated party may elect whether he will take his writ of error or appeal to the Supreme Court on the question of jurisdiction alone, or to the Circuit Court of Appeals on the whole case.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1097–1099, 1101, 1103; Dec. Dig. § 405.*]

3. PLEADING (§ 216*)—JUDICIAL DECISIONS—INCORPORATION—REFERENCE.

Where a declaration against carriers for reparation after a freight rate had been declared excessive by the Interstate Commerce Commission did not in terms allege the particular rates that were passed on by the commission, but did set out the citations of the cases where the determination of the commission was reported for the purpose of incorporating the pertinent facts of the decisions into the declaration by reference, the court was authorized to examine the facts set out in such decisions in determining the demurrer.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 535–539; Dec. Dig. § 216.*]

4. COMMERCE (§ 92*)—INTERSTATE COMMERCE—ILLEGAL RATE—REPARATION—TIME.

Interstate Commerce Act Feb. 4, 1887, c. 104, § 9, 24 Stat. 382 (U. S. Comp. St. 1901, p. 3159), provides that any person claiming to be damaged by a common carrier may either make complaint to the commission or bring suit to recover damages in any District or Circuit Court of the United States of competent jurisdiction, but that he shall not pursue both remedies. Section 16 declares that, if after complaint and hearing, the commission shall determine that complainant is entitled to damages, it shall make an order directing the carrier to pay the sum fixed by a day named, and, in case of noncompliance, the complainant may enforce it in the Circuit Court of the United States, but that all complaints for damages should be filed with the commission within two years from the time the action accrued and not after, and a petition for the enforcement of an order for the payment of money shall be filed within one year from the date thereof, provided that claims accruing prior to the passage of the act may be presented within one year. *Held* that, where the Interstate

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Commerce Commission made an order finding that a certain lumber rate was excessive on February 7, 1905, plaintiff was not entitled to maintain an action, not instituted until May 11, 1909, under section 9, to recover reparation for overcharges on shipments, the last of which was made August 15, 1904.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 142; Dec. Dig. § 92.*]

5. COURTS (§ 405*)—REVIEW—SEVERANCE.

Where a suit for reparation was brought against several defendant railroad companies, the liability of each depending on the same ground, and no proceeding was taken by plaintiff or demanded by any of the defendants for a severance, but the case continued as one against all defendants, the entire case might be taken on appeal to the Circuit Court of Appeals, though one of the defendants raised a question of jurisdiction only.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1097–1099, 1101, 1103; Dec. Dig. § 405.*

When summons and severance of parties on appeal or writ of error is authorized or required, see note to City of Detroit v. Guaranty Trust Co., 93 C. C. A. 608.]

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

Action by the A. J. Phillips Company against the Grand Trunk Western Railway Company and others. Judgment for defendants, and plaintiff brings error. Affirmed.

This action was brought by the Phillips Company to recover damages alleged to have been sustained through excessive freight charges exacted by defendants. Ever since April, 1903, plaintiff has been engaged in the business of buying lumber, and manufacturing door and window screens and other articles of commerce at Fenton, Mich. Defendants are interstate carriers whose lines so connect as to enable shippers to move freight over them from Mobile, Ala., to Fenton. Plaintiff caused a car load shipment of 38,800 pounds of lumber to be made over these lines from Mobile to Fenton, the shipment being commenced July 15, 1904. The rate charged by defendants was 30 cents per 100 pounds, and the claim is that this was 2 cents per 100 pounds in excess of a just and reasonable rate.

The basis of this claim is an order alleged to have been made by the Interstate Commerce Commission on February 7, 1905, and affirmed by the Supreme Court May 27, 1907. Neither the order nor the rates in terms appear in the declaration, and this is true, also, as to the names of the parties to the proceedings; but these facts appear in the reported decisions, which are referred to by volume and page in the declaration. The allegations of the first count of the declaration in substance are that upon hearing the commission determined what was the reasonable freight rate to be charged per 100 pounds on lumber shipped in car loads from points in territory lying east of the Mississippi river in Louisiana, Mississippi, and part of Alabama, to points on the Ohio river and as to shipments destined to points north of the river; and, further, that a certain increase in rates of two cents per 100 pounds, which had been made and put into force April 15, 1903, on such shipments was unlawful, unreasonable, and excessive to that extent. The declaration contains 216 counts. The first count only is set out in the record brought here, but it is agreed that the rest of the counts are the same as this, except as to amounts and dates of shipments and deliveries, such shipments running from April 29, 1903, to August 15, 1904. The damages claimed in the first count are $6.86, and in all the counts $1,808.65. The plaintiff was not a party to the proceedings before the Interstate Commerce Commission. The claim is that the finding of the commission inures to the benefit of plaintiff, as well as to other shippers who were parties.

Service of copy of declaration and rule to plead was made upon counsel.

who accepted same for the Grand Trunk Western and the Detroit, Grand Haven & Milwaukee Companies. Service was made on the Illinois Central Railroad by delivery of similar copy to T. F. Sweat, commercial agent of the company, and in charge of its offices in Detroit. Process was never served upon the Southern Railway Company, and no appearance was ever made in its behalf. The Grand Trunk Company appearing specially and objecting to the jurisdiction of the court demurred to the declaration, assigning four causes, the last one, however, being abandoned. It appears from the judgment entry and assignments of error that the Detroit, Grand Haven & Milwaukee appeared specially and demurred the same as did the Grand Trunk. The Illinois Central appeared specially, and objected to the jurisdiction of the court, and moved to set aside service on Sweat as agent. The court below sustained the two demurrers and the motion, stating that "it was without jurisdiction." The Southern Railway Company was dismissed for want of either service or appearance, and need not be noticed further. No question is raised touching the sufficiency of service upon the Grand Trunk or the Detroit, Grand Haven & Milwaukee Companies, but sufficiency of service upon the Illinois Central is contested on the grounds that the company is an Illinois corporation having no station or line of road in Michigan, and that Sweat was not a station agent or ticket agent or representative of the road in the sense that service upon him was service upon the company. Motion to dismiss was made in this court by defendants on the ground that plaintiff's only remedy is by proceedings to be taken directly to the Supreme Court.

C. I. Webster (Choate, Webster, Robertson & Lehmann, on the brief), for plaintiff in error.

L. C. Stanley, for defendants in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). The contention of plaintiff is that two questions are involved—one of jurisdiction and the other upon the merits of the action; while the contention of defendants is that the only question arising is that of jurisdiction. The ultimate theory of defendants is (a) that as to all the companies the issues concern only the jurisdiction of the Circuit Court as a federal court; and (b) that since the Illinois Central is a foreign corporation having no line of road or station in Michigan the additional point arises whether Sweat is an agent upon whom service of process could properly be made, and it is urged that he is not.

In the view we take of the case, we may for the present pass the question whether the court obtained jurisdiction of the person of the Illinois Central Company; for, since due service of process was admittedly made upon the remaining companies, we shall as to those companies have to determine the issue concerning the jurisdiction of the Circuit Court as a federal court.

[1] It is stated in the third ground of demurrer of these two defendants:

"It does not appear and is not alleged in said declaration that the Interstate Commerce Commission of the United States has ever passed upon the reasonableness, legality, justice, propriety or otherwise of the said rates of freight, nor has it made any order of reparation or payment in the premises."

It is manifest that it was intended in this way to raise the question whether it was not necessary as a condition precedent to the jurisdiction of the Circuit Court to allege that an order had previously been

made by the Interstate Commerce Commission finding that the particular freight rate in dispute was unreasonable, fixing the amount of plaintiff's damages, and awarding it reparation. This is a challenge upon principles of general law concerning the right of the Circuit Court to entertain the action, and not of its jurisdiction as a federal court; and this we think is the true interpretation of the judgment below. Whether the allegations touching such previous action of the Interstate Commerce Commission are sufficient in law to entitle plaintiff to maintain this suit is clearly a question that the Circuit Court could rightfully consider and determine. If they are (and we lay aside the question of lapse of time for the present), the Circuit Court clearly had jurisdiction under section 16 of the act to regulate commerce to entertain the action. Act June 29, 1906, c. 3591, 34 Stat. 590 (U. S. Comp. St. Supp. 1909, p. 1159); Act Feb. 4, 1887, c. 104, 24 Stat. 384 (U. S. Comp. St. 1901, p. 3165). Defendant's contention therefore comes to be that the Circuit Court's jurisdiction as a federal court is involved solely because it might have held that the facts stated in the declaration do or do not constitute a cause of action. In Fore River Shipbuilding Co. v. Hagg, 219 U. S. 175, 178, 31 Sup. Ct. 185, 186 (55 L. Ed. 163), in passing upon section 5 of the Court of Appeals Act (Act March 3, 1891, c. 517, 26 Stat. 827 [U. S. Comp. St. 1901, p. 549]), respecting the direct review there given, Mr. Justice Day said:

"The court has had frequent occasion to determine what is meant in the statute providing for review of cases in which the jurisdiction of the court is in issue, and it has been held that the statute means to give a review, not of the jurisdiction of the court upon general grounds of law or procedure, but the jurisdiction of the court as a federal court."

See, also, Boston & Maine Railroad Co. v. Gokey, 210 U. S. 155, 166, 28 Sup. Ct. 657, 52 L. Ed. 1002; Louisville Trust Co. v. Knott, 191 U. S. 225, 24 Sup. Ct. 119, 48 L. Ed. 159; Bache v. Hunt, 193 U. S. 523, 525, 24 Sup. Ct. 547, 48 L. Ed. 774.

[2] Clearly the present case involves a question upon the merits, as well as one of jurisdiction. In such cases it is open to the defeated party to elect whether he will take his writ of error or appeal to the Supreme Court upon the question of jurisdiction alone, or to the Circuit Court of Appeals upon the whole case. In Olds v. Hettler Lumber Co., 195 Fed. 9. Judge Denison said:

"It is well settled that, where the only question properly raised by the assignments of error is that of the jurisdiction of the trial court, this court cannot review, but such writ of error must be taken directly to the Supreme Court (Remington v. Cent. Pac. R. R., 198 U. S. 95, 97 [25 Sup. Ct. 577, 49 L. Ed. 959]; Coler v. Grainger Co. [C. C. A. 6th Cir.] 74 Fed. 16, 21 [20 C. C. A. 267]; Kentucky State Board v. Lewis [C. C. A. 6th Cir.] 176 Fed. 556 [100 C. C. A. 208]); and also that if the trial court did decide and if the assignments of error do fairly raise an independent question of general law as well as the question of jurisdiction, then this court has power to hear and decide all the questions (Boston & Maine R. R. Co. v. Gokey, 210 U. S. 155 [28 Sup. Ct. 657, 52 L. Ed. 1002], and cases cited. See, also, review of decisions in Morisdale Co. v. Pennsylvania Co. [C. C. A. 3d Cir.] 183 Fed. 929, 938 [106 C. C. A. 269])."

See rule 2 and decisions commented on in its support in Morisdale Coal Co. v. Pennsylvania R. Co., supra, 183 Fed. 942, 106 C. C. A. 269 et seq.; Loveland, Appellate Jur. § 105, and decisions there cited.

The trial court sustained the demurrers, and this is assigned as error. It follows that it is the duty of this court to pass upon the sufficiency of the declaration.

[3] The declaration fails in terms to state the particular rates that were passed upon by the Interstate Commerce Commission. The allegation of the declaration indicates that it was the purpose of plaintiff by reference to incorporate the pertinent facts of the decisions into the declaration. We think the decision of the Supreme Court in Robinson v. B. & O. R. R. Co., 222 U. S. 506, 512, 32 Sup. Ct. 114, 56 L. Ed. ——, warrants examination of the facts set out in those decisions, to wit, Central Yellow Pine Association v. Illinois Central R. Co., 10 Interst. Com. R. 505; Illinois Central R. Co. v. Interstate Com. Com., 206 U. S. 441, 27 Sup. Ct. 700, 51 L. Ed. 1128. The rate in dispute in those cases was one of 16 cents per 100 pounds of lumber carried in car loads from the lumber-producing territory in the South, described in the statement, to points on the Ohio river. For several years prior to April 15, 1903, the rate was 14 cents. The through rates from the points of origin in the South to points north of the Ohio river, within the Central Freight Association Territory, were made up as follows: The 14-cent rate charged south of and to the Ohio river (including the crossing) was added to the sum of the local rates charged thence by the roads north of the river to the point of destination. The issue there involved was whether the railroads could rightfully add 2 cents to the 14-cent rate for moving the lumber north to Ohio river points. The commission held that they could not.

It is alleged in the declaration that plaintiff was charged 30 cents per 100 pounds for shipments from Mobile to Fenton, and that this was 2 cents in excess of a reasonable rate. Plainly, during the period that the 16-cent rate south of the river was in force, the sum of the local rates charged by the roads for service north of the Ohio river was 14 cents. It must be presumed, in the absence of allegation to the contrary, that the rate charged and paid north of the river was published and filed and also reasonable; and on demurrer to the present declaration the 16-cent rate south of the river must be regarded as unreasonable to the extent of 2 cents per 100 pounds.

Can the plaintiff then make the order of the Interstate Commerce Commission, respecting the rate south of the river, the basis for recovery of its alleged damages? Aside from other obvious questions, this must depend upon whether the Interstate Commerce Act furnishes an exclusive remedy for recovering such damages. In one sense it would seem unnecessary for plaintiff to present its complaint to the commission before instituting an action like this. One of the potent reasons stated in the decisions for requiring claimants to present such matters to the commission is that the rate question in all respects is administrative in its nature; and that the commission is a special tribunal created by act of Congress to determine such questions. Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; Robinson v. B. & O. Railroad Co., supra.

[4] It is insisted that the present suit is maintainable under section 9 of the act to regulate commerce passed February 4, 1887. That section provides that any person claiming to be damaged by a common carrier subject to the provisions of the act—

"may either make complaint to the commission as hereinafter provided for, or may bring suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this act, in any district or circuit court of the United States of competent jurisdiction; but such person or persons shall not have the right to pursue both of said remedies, and must, in each case, elect which one of the two methods of procedure herein provided for he or they will adopt."

The policy and intent of Congress, however, in creating the commission as a special tribunal to pass upon rate questions, cannot be fully described, without stating its further intent respecting the time within which complaints for the recovery of damages shall be filed with the commission. Section 16 of the same act as amended provides that if after complaint and hearing, as provided in section 13, the commission shall determine that complainant is entitled to an award of damages, it shall make an order directing the carrier to pay the sum fixed by a day named; and that, if the carrier does not comply with the order, the complainant or any person for whose benefit the order is made may enforce it in the Circuit Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier or through which the road of the carrier runs. And the section further provides:

"All complaints for the recovery of damages shall be filed with the commission within two years from the time the cause of action accrues, and not after, and a petition for the enforcement of an order for the payment of money shall be filed in the Circuit Court within one year from the date of the order, and not after: Provided, That claims accrued prior to the passage of this act may be presented within one year."

This act was passed June 29, 1906, and it took effect August 28th. 34 Stat. L. 584, 590; Act June 30, 1906, Rev. No. 47 (34 Stat. 838). The last shipment now in dispute was made August 15, 1904, and this action was commenced May 11, 1909. It is apparent, indeed it is conceded, that, if plaintiff's claim is affected by section 16, it is barred by lapse of time. The burden is therefore upon plaintiff to show that the suit can be maintained under section 9. It was decided in the Abilene Case that money exacted by a carrier which was claimed to be in excess of a reasonable rate could not be recovered, in the absence of a showing that the alleged unreasonableness of the rate had been determined by the Interstate Commerce Commission. In the Robinson Case, the same conclusion was reached concerning a rate (as to cost of loading cars) that was alleged to be unjustly discriminatory. Damages arising from the exaction of such a rate are so related to it in character and circumstance as to present considerations kindred to those involved in the inquiry as to complaints of the rate itself. The reasons entering into the conclusion of the commission that a rate is unreasonable or discriminatory might not be convincing that all persons paying the rate were entitled to reparation. The new rate fixed by the commission is

for the benefit of the public, as well as complainants. The present plaintiff does not allege that the excessive rate of which it complains was charged or paid against its objection or protest. It might well be that plaintiff then regarded the through rate, as an entirety, as fair and reasonable, and so for that reason or for other reasons may have paid the rate voluntarily. The fact that plaintiff made no complaint to the commission at all and suffered so long a time to elapse before taking any action whatever to recover the excess justifies an inference that it was satisfied with the rate. These and similar considerations emphasize the fact that the question whether rates are unreasonable or discriminatory is vitally related to all questions of reparation for their exaction.

The claim in the Robinson Case was for an exaction made of 50 cents more per ton when coal was loaded into cars from wagons than when loaded from a tipple. It was contended that recovery was warranted by section 22 of the act which provides that:

"Nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies."

Of this Mr. Justice Van Devanter said (222 U. S. 511, 32 Sup. Ct. 116, 56 L. Ed. ——):

"Of course, the provision in section 22, as also the provision in section 9, must be read in connection with other parts of the act and be interpreted with due regard to its manifest purpose, and, when that is done, it is apparent that neither provision recognizes or implies that an action for reparation, such as is here sought, may be maintained in any court, federal or state, in the absence of an appropriate finding and order of the commission."

True, the learned justice was there speaking of the necessity for a previous finding and order of the commission as to the reasonableness of a distinction made between loading from wagons and loading from a tipple; but, apart from what was there said of reparation, the rule of interpretation laid down is suggestive of a rule that should be applied here. Section 16 provides, as before pointed out, that, if, after hearing on a complaint made as provided in section 13 of the act, the commission shall determine that any person complaining is entitled to an award of damages, the commission shall make an order directing the carrier to pay. Section 13 provides generally that persons complaining of anything done by a carrier in contravention of the act may apply to the commission by petition, and, in case the carrier shall fail after notice from the commission to make reparation, the commission shall investigate the matters complained of. As illustrative of the simplicity and dispatch intended by the act for the benefit of shippers, we may refer to a decision of this court holding that the filing of a letter of complaint is sufficient to warrant action on the part of the commission. Louisville & N. R. Co. v. Dickerson (C. C. A.) 191 Fed. 705, 711.

It is clear that all complaints respecting unreasonable or discriminatory rates must be made in pursuance of section 13. That section is by reference incorporated into section 16, which distinctly limits the time within which such complaints shall be filed. It results, we think, that the remedy thus provided is exclusive as respects alike complaints

as to rates and reparation consequent upon their exaction. We are not unmindful of the decision in Southern Railway Co. v. Tift, 206 U. S. 428, 439, 440, 27 Sup. Ct. 709, 712 (51 L. Ed. 1124, 11 Ann. Cas. 846), where, in view of previous stipulation of the parties, the court refused to interfere with the action of the court below in adjudging reparation after the commission had declared the rates unreasonable; but the court rested its decision "upon the stipulation;" and, construing the decision in the Abilene Case, Mr. Justice McKenna said:

"And it was in effect held that reparation after such action for the excess above a reasonable rate must be by a proceeding before the commission, 'because of a wrong endured during the period when the unreasonable schedule was enforced by the carrier and before its change and the establishment of a new one.'"

The language thus quoted was in part derived from the opinion of the present Chief Justice in the Abilene Case, in which he was analyzing the power vested in the commission "to compel the establishment of a new schedule of rates applicable to all" and also to grant reparation; the learned justice saying (204 U. S. 446, 27 Sup. Ct. 357, 51 L. Ed. 553, 9 Ann. Cas. 1075):

"And like reasoning would be applicable to the granting of reparation to an individual after the establishment of a new schedule because of a wrong endured during the period when the unreasonable schedule was enforced by the carrier and before its change and the establishment of a new one."

Further, it is to be observed that the limitations prescribed by section 16 apply as stated to "all complaints for the recovery of damages," and it requires that "they shall be filed with the commission, within two years from the time the cause of action accrues, and not after." This is certainly very comprehensive. As the section existed at the date of the shipment in question (July 15, 1904), it did not contain this limitation or any other in point of time. But as the section was amended June 29, 1906 (and took effect in 60 days after approval, 34 U. S. Stat. L. 838), the limitation in time was imposed as before pointed out. It required that the petition for enforcement of an order to pay money shall be filed in the Circuit Court "within one year from the date of the order, and not after: Provided, That claims accrued prior to the passage of this act may be presented within one year." This court in L. & N. R. Co. v. Dickerson, supra, held (page 711 of 191 Fed.):

"That claims accruing before August 28, 1906, may be presented within one year from that date, even though accruing more than two years previous to the date named."

We have already stated that the present action was not commenced until May 11, 1909, a period of nearly three years (instead of one year) after the act took effect. It is urged that under section 9 the plaintiff was entitled to bring suit at any time within the limit of actions for debt. This limitation, of course, would be determined according to the statutes of the several states. Surely, one feature of the intent of Congress in its enactment of the limitations in question was to establish uniformity in time, as well as forum, in which such damages might be enforced. It is a subject clearly within the power

of Congress, for it relates alone to interstate roads and commerce. To permit persons to maintain actions based upon orders of the commission to recover damages for excessive rates within the varying periods fixed as to actions for debt would at once create confusion respecting the operation and effect of rate orders made by the commission, and obviously contravene the clearly defined policy of Congress. The logic of the plaintiff's insistence is that it might maintain this suit under section 22, as well as under section 9, and so enforce its claim in either a state or federal court, regardless of the limitations in point of time contained in section 16. No decision is cited, and we do not know of any that sustains such an action.

[5] From what has been said it necessarily follows that the motion made in this court by the Grand Trunk and Detroit, Grand Haven & Milwaukee Railways to dismiss the writ of error must be denied. The similar motion made by the Illinois Central requires separate consideration. The motion of that company in the court below presented by its earlier grounds a point of personal jurisdiction (as to service upon Sweat), and by its fifth ground the point that the declaration is not good. Here was a question of general law as well as one of jurisdiction; but under our holding in Olds v. Lumber Co. this fifth ground could have been considered by the Circuit Court only as a waiver of the jurisdictional point made by the other grounds, and so the only ultimate question raised by the motion was jurisdictional. It might therefore seem that the only review as to that company was in the Supreme Court, and that its motion in this court to dismiss should be granted; but, owing to the peculiar situation here existing, we think this result does not follow. The action was against several defendants, of which this railroad was one. The liability of each seems to depend upon the same ground. No proceeding was taken by plaintiff or demanded by the Illinois Central for a severance. The case continued as one case as to all defendants. It would be anomalous to require in such case separate writs of error, one to the Supreme Court as to one defendant and another to this court as to other defendants. There seems to be substantial analogy between the situation arising where one defendant presents a question of jurisdiction and a question on the merits, and a case where with several joint defendants a question of jurisdiction exists as to one and a question on the merits as to others; and this analogy leads us to conclude that in the latter situation as in the former the entire case may be brought to this court in a unitary way and we may consider the question of jurisdiction, although as to one defendant it was the sole question which existed below.

It follows that the motion by the Illinois Central to dismiss the writ of error must be denied; and, while we have power to review the question whether good personal service on that railroad was had, yet it becomes unnecessary to do so because of the conclusion we have reached that plaintiff has no case on the merits.

The judgment below must be affirmed, with costs.