MORGAN'S LOUISIANA & T. R. & S. S. CO. et al. v. ISAAC JOSEPH
IRON CO.

(Circuit Court of Appeals, Sixth Circuit.    June 5, 1917.)

No. 2964.

1. COMMERCE ⊗98—INTERSTATE COMMERCE COMMISSION—FINDINGS—REVIEW.
    A finding of the Interstate Commerce Commission that a through rate
from Houston to Chicago was unreasonable, so far as it exceeded the
sum of the local rates, will not be disturbed, when supported by evi-
dence, though the local rate from Houston to New Orleans, used as a
basis of comparison, applied only to shipments destined to points be-
yond New Orleans to which no through rates were published; no other
rate from Houston to New Orleans being shown, and there being no at-
tempt to show any reason for any distinction between Chicago and other
points beyond New Orleans.
    [Ed. Note.—For other cases, see Commerce, Cent. Dig. § 148.]

2. EVIDENCE ⊗46—JUDICIAL NOTICE—ORDERS OF INTERSTATE COMMERCE COM-
MISSION.
    Where, in an action to enforce an order of reparation by the In-
terstate Commerce Commission, a demurrer was sustained to an answer
alleging that the Commission had rescinded such order, and an appeal
was taken, the Circuit Court of Appeals may judicially notice subsequent
proceedings of the Interstate Commerce Commission, resulting in the rein-
statement of such order, though not brought to the attention of the cour. t
below, especially where they are practically admitted by counsel.
    [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 68.]

3. APPEAL AND ERROR ⊗170(1)—REVIEW—MATTERS NOT PRESENTED BELOW.
    Such later proceeding of the Interstate Commerce Commission would
be passed on by the Circuit Court of Appeals, rather than to subject the
parties to the delay and expense of taking further steps in the court
below, especially since the question concerning the setting aside of the
order of reparation becomes one of a moot character, in view of the later
proceeding, and no attempt was made, and no purpose was expressed, by
the railroads, either before the Commission or in the lower court, to offer
evidence tending to overcome the prima facie effect of the order of repara-
tion.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1035.]

4. COMMERCE ⊗88—INTERSTATE COMMERCE—ORDERS—SUCCESS OF ORDERS.
    Where the Interstate Commerce Commission made three reports on an
application for reparation, the first of which granted reparation and was
rescinded by the second report, and the last report affirmatively showing
that it was supplementary to the other reports and designed to give
effect to them, and provided for re-entry of the order for reparation, the
three reports should be read together.
    [Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 139, 141.]

5. APPEAL AND ERROR ⊗719(9)—ASSIGNMENTS OF ERRORS—ALLOWANCE OF
COUNSEL FEES.
    The contention that an allowance of counsel fees in a judgment sus-
taining a demurrer was premature will not be passed on, where error is
not assigned to this feature of the judgment.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3490.]

In Error to the District Court of the United States for the South-
ern District of Ohio; Howard C. Hollister, Judge.

⊗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by the Isaac Joseph Iron Company against Morgan's Louisiana & Texas Railroad & Steamship Company and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Fred H. Wood, of New York City, Denegre, Leovy & Chaffe, of New Orleans, La., and Harmon, Colston, Goldsmith & Hoadly, of Cincinnati, Ohio, for plaintiffs in error.

Harry C. Barnes, of Cincinnati, Ohio, for defendant in error. ·

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. This was an action to recover $682.34 with interest, as damages resulting from the exaction of an alleged unreasonable and unjustly discriminatory joint through rate for the transportation of certain shipments of scrap iron in carloads from Houston, Tex., to Chicago, Ill. An order of reparation for payment of this sum and interest had previously been made by the Interstate Commerce Commission on complaint of the present defendant in error, herein called the Iron Company, against the plaintiffs in error, here called the Railroads. The complaint was filed with the Commission May 14, 1914, and the report and order of the Commission finding such through rate to be unreasonable were entered November 2, 1915. The ground of this finding was that the rate charged exceeded the sum of the intermediate rates concurrently charged over the same lines between Houston and Chicago. An application made to the Commission on behalf of the Railroads for authority to continue higher through rates on scrap iron between the points mentioned than the sum of the intermediate rates was heard with the complaint of the Iron Company and was denied at the time the finding and award of reparation were made. The amount embraced in the Commission's order of reparation was the difference between the through rate exacted and a combination rate based on the intermediate rates. The petition alleges that the Railroads did not comply with the order of the Commission and that they refuse to pay the sum awarded. The answer of the Railroads is confined to an allegation that on March 16, 1916, the Interstate Commerce Commission set aside the order mentioned in the petition, and to a prayer for dismissal, with costs. The Iron Company demurred to the answer on the ground that it does not constitute a defense; and, upon the familiar rule that a demurrer searches the record, the Railroads insisted that the petition fails to state a cause of action. The demurrer was in terms overruled as to the petition and sustained as to the answer; and, the Railroads not desiring to amend the answer, judgment was entered for the Iron Company, with interest and costs, including an attorney's fee. The Railroads bring the questions here upon the writ of error.

The Railroads base their contention upon two grounds. One concerns a rate from Houston to New Orleans which was employed in making up the sum of the intermediate rates, and the other·relates to the effect of the alleged setting aside of the reparation order. The contention in respect of the rate so employed grows out of this state of fact: A proportional rate of 9½ cents per 100 pounds in carloads

was at this time in effect from Houston to New Orleans, "when destined to points beyond to which no through rates" were published; and since the through rate in question of 30 cents per 100 pounds, or $6 per ton, prevailed between Houston and Chicago, via New Orleans, it is urged that the application of the proportional rate mentioned was restricted to points beyond New Orleans, between which and Houston no through rates had been published. No rate other than 9½ cents per 100 pounds from Houston to New Orleans is shown. As respects this rate and the through rate from Houston to Chicago the Commission said:

"We hold that the 9½ cents proportional rate was not so restricted or limited as to make it inapplicable as a factor in constructing a through rate to Chicago had there been no joint rate in effect. We find upon consideration of all the facts that joint through rate of 30 cents per 100 pounds was unreasonable to the extent that it exceeded the combination of intermediate [rates] concurrently in effect, i. e., $5.21 per ton."

This was in harmony with the holding of the Commission in Windsor Turned Goods Co. v. C. & O. Ry. Co. (1910) 18 Interst. Com. Com'n Rep. 162, 164, where it was said:

" * * * The fair measure of the reasonableness of a joint through rate that exceeds the combination between the same points via the same route is, and will hereafter be held to be, the lowest combination that would lawfully apply if the joint rate were canceled."

[1] Whether the conclusion so reached by the Commission was intended to be one of law, rather than one of fact, touching the application of the proportional rate of 9½ cents, is not entirely clear. Nor need we consider this feature of the case; for it is plain that the Commission's conclusion of fact that the 30-cent through rate was unreasonable, so far as it exceeded the sum of the proportional rate per 100 pounds from Houston to New Orleans and the existing local rate per 100 pounds from New Orleans to Chicago (26$^{1}$/$_{20}$ cents), is not without support in the evidence and must be accepted by us. The fact that the Railroads were willing to accept 9½ cents to New Orleans on traffic extending beyond New Orleans certainly had a tendency to show that this was a reasonable rate for all such traffic regardless of the destination; and there was no attempt to show a good reason for any distinction between Chicago and other points.

It remains to consider whether we are bound to conclude that the order of reparation was intended permanently to be set aside. It is true, as we have seen, that the answer alleges that on March 16, 1916, the Commission set aside the order, and that according to the transcript this was met simply by demurrer. We assume that if the Commission had intended to rescind its order permanently, for instance, as an improvident order, the demurrer to the answer should have been overruled;[1] but it appears that the Commission had no such intention.

---

[1] The question thus assumed, and not intended to be decided, pertains broadly to the rate-making power of the Commission, since the order so set aside involves, not merely reparation in the form of damages, but also the Commission's finding that the through rate in issue was unreasonable to the extent stated in the Commission's report and incorporated by reference into its reparation order; in other words, would permanent rescission of such

The learned counsel for the Railroads frankly stated in oral argument that the Commission thereafter reinstated the order. Further, counsel for the Iron Company sets out in his brief, without objection or denial of opposing counsel, what purports to be a copy of the alleged rescinding order; this is true, also, of a later report the Commission made upon the subject, June 29th following; and this report appears under that date in 40 Interst. Com. Com'n Rep. 525, 526. The rulings upon the demurrer were made below on July 5, and the judgment was entered August 8, 1916; and while it does not appear that the proceedings of the Commission had been called to the attention of the court below, yet, concededly, if this had been done either through pleadings or an approved report of the proceedings, a temporary setting aside and a re-entry of the reparation order would have been disclosed.

[2, 3] However, since the Commission's adoption of the later proceedings is in practical effect admitted by counsel, we see no reason why they should not be judicially noticed and passed on here, rather than to subject the parties to the delay and expense of taking further steps in the court below. Butler v. Eaton, 141 U. S. 240, 244, 11 Sup. Ct. 985, 35 L. Ed. 713. And see A. J. Phillips Co. v. Grand Trunk Western Ry. Co., 195 Fed. 12, 16, 115 C. C. A. 94 (C. C. A. 6); Robinson v. Balt. & Ohio R. R., 222 U. S. 506, 512, 32 Sup. Ct. 114, 56 L. Ed. 288. Indeed, the question concerning the setting aside of the order of reparation becomes one of a moot character in view of the later admitted proceedings, and this of itself justifies their consideration (Keely v. Ophir Hill Consol. Mining Co., 169 Fed. 601, 605, 606, 95 C. C. A. 99, and citations [C. C. A. 8]); and above all (apart from the alleged rescission) no attempt was made and no purpose expressed by the Railroads, either before the Commission or in the court below, to offer evidence that would have tended to overcome the prima facie effect of an order of reparation like the present one (Meeker & Co. v. Lehigh Valley R. R., 236 U. S. 412, 430, 35 Sup. Ct. 328, 59 L. Ed. 644, Ann. Cas. 1916B, 691; Darnell-Taenzer Lumber Co. v. Southern Pac. Co., 221 Fed. 890, 892, 137 C. C. A. 460 [C. C. A. 6]).

Turning then to a consideration of the Commission's action as it is reported in 40 Interst. Com. Com'n Rep. 525, 526, it appears that the report of June 29th was a "supplemental report," the Commission with one dissent stating (page 525):

"This case was reopened upon defendants' petition for further consideration upon brief. The original report appears in 37 Interst. Com. Com'n Rep. 591. * * * Orders were entered for reparation and denying relief from the aggregate of intermediates rule of the fourth section. When the case was reopened, the order for reparation was vacated and set aside, but the fourth section order was continued in full force and effect."

And further (page 526):

"We adhere to our previous decision, and will accordingly re-enter the order for reparation. The petition for rehearing was filed because certain

---

an order be the substantial equivalent of an original finding that the through rate was reasonable, and so amount to a negative order within the meaning of Procter & Gamble v. United States, 225 U. S. 282, 292, 32 Sup. Ct. 761, 56 L. Ed. 1091? This precise question does not appear to have been involved in any decision that has come to our attention.

carriers construed our decision as a ruling that all restricted proportional rates were to be considered in determining whether or not the through rate exceeds the aggregate of the intermediate rates. It is to be understood that we are dealing only with the facts in this case, including the fact that the proportional rate in question was not so properly restricted or limited as to make its application definite, clear, or ascertainable, and what we have here held is not to be construed as applicable in cases where the use of proportional rates is properly defined."

[4] Thus it appears that the first two reports the one referred to in the petition and the other in the answer, were made in the same proceeding, and the last report, the one of June 29th, affirmatively shows that it is supplementary to the other reports and designed to give effect to them; and so we think the case falls fairly within the course sanctioned in Meeker & Co. v Lehigh Valley R. R. Co., 236 U. S. 412, 428, 35 Sup. Ct. 328, 59 L. Ed. 644, Ann. Cas. 1916B, 691, where, in respect of two reports made by the Commission in the same proceeding, the later one affirmatively showing that it was made to supplement and give effect to the original, it was held that they should be read together. Darnell-Taenzer Lumber Co. v. Southern Pac. Co., supra.

[5] It is objected in a supplemental brief of counsel for the Railroads, that the judgment is erroneous in its allowance of an attorney's fee as part of the costs of suit. The point made is that the statute allows such a fee only in a case where the petitioner shall "finally prevail" (Act June 18, 1910, c. 309, § 13, 36 Stat. 554, § 16 [Comp. St. 1916, § 8584]), and consequently that the fee was prematurely taxed; reliance being placed upon the decision in Missouri Pacific Ry. Co. v. C. E. Ferguson Saw Mill Co., 235 Fed. 474, 482, 149 C. C. A. 20 (C. C. A. 8). We are not, however, called upon to pass on the question, since error is not assigned to this feature of the judgment, though it may be observed that the practice pursued below has apparently received sanction in Meeker & Co. v. Lehigh Valley R. R. Co., supra, 236 U. S. 433, 35 Sup. Ct. 328, 59 L. Ed. 644, Ann. Cas. 1916B, 691, and Mills v. Lehigh Valley R. R., 238 U. S. 473, 482, 35 Sup. Ct. 888, 59 L. Ed. 1414. And see Mills v. Lehigh Valley R. Co. (D. C.) 226 Fed. 812, 814. Although an additional fee is asked here, we think that, in view of the amount involved, as above stated, and of the fee awarded below, $500, no further allowance should be made.

The judgment will be affirmed.