MISSOURI PAC. RY. CO. et al. v. C. E. FERGUSON SAWMILL CO.*

(Circuit Court of Appeals, Eighth Circuit. July 19, 1916.)

No. 4604.

1. PLEADING ⊜⟞369(1)—INTERSTATE COMMERCE COMMISSION—ACTION TO EN-
FORCE AWARD OF DAMAGES—ELECTION.

In an action against railroad companies to enforce an order of the
Interstate Commerce Commission awarding reparation to plaintiff for
unjust and unreasonable freight charges exacted by defendants, a motion
to require plaintiff to elect on which one of two orders of the Commis-
sion it would rely was properly denied, where the second order merely
modified the first in a formal particular having nothing .to do with the
award of damages; nor was it material that the second order did not
change the date fixed by the first for payment of the award, which had
already passed.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1199, 1200;
Dec. Dig. ⊜⟞369(1); Replevin, Cent. Dig. § 206.]

2. COMMERCE ⊜⟞95—INTERSTATE COMMERCE COMMISSION—ACTION TO ENFORCE
AWARD OF DAMAGES—EVIDENCE.

Under the provision of Interstate Commerce Act Feb. 4, 1887, c. 104,
§ 16, 24 Stat. 384, as amended by Hepburn Act June 29, 1906, c. 3591, § 5,
34 Stat. 590 (Comp. St. 1913, § 8584, subd. 2), that a suit for damages
based on an award of the Interstate Commerce Commission "shall pro-
ceed in all respects like other civil suits for damages," except that "the
findings and order of the Commission shall be prima facie evidence of
the facts therein stated," the plaintiff in such action may introduce evi-
dence in addition to that produced before the Commission.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 145; Dec.
Dig. ⊜⟞95.]

3. COMMERCE ⊜⟞85—INTERSTATE COMMERCE COMMISSION—JURISDICTION TO
AWARD DAMAGES.

Objections to the jurisdiction and authority of the Interstate Com-
merce Commission to award damages to a shipper because of unjust and
unreasonable freight charges exacted by railroad companies considered,
and held without merit.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 138; Dec. Dig.
⊜⟞85.]

4. COMMERCE ⊜⟞87—INTERSTATE COMMERCE COMMISSION—AUTHORITY TO
AWARD DAMAGES—LIMITATION.

Interstate Commerce Act Feb. 4, 1887, § 16, as amended by Act June
29, 1906, § 5 (Comp. St. 1913, § 8584, subd. 2), relating to awards of dam-
ages by the Interstate Commerce Commission, provides that "all com-
plaints for the recovery of damages shall be filed with the Commission
within two years from the time the cause of action accrues and not
after." Held, that the filing of a complaint within such time, asking a
modification of a rate and generally for reparation for all sums unlaw-
fully collected, was a compliance with such requirement and authorized
the Commission to make an award of damages, although the complaint
contained no specific statement of the shipments on which reparation
was claimed and such statement was not filed until more than two years
thereafter and after a hearing as to the legality of the rate complained
of, where no objection was made on that ground before the Commission.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 139; Dec.
Dig. ⊜⟞87.]

5. COMMERCE ⊜⟞86—INTERSTATE COMMERCE COMMISSION—AUTHORITY TO
AWARD DAMAGES.

That other carriers, not parties to a proceeding before the Interstate
Commerce Commission, participated to a small extent in the transporta-

⊜⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied November 20, 1916.

tion of shipments on account of which an award of damages was made against defendants, *held* not to invalidate the award.'

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 140; Dec. Dig. ⊛86.]

6. COMMERCE ⊛85—INTERSTATE COMMERCE COMMISSION—AWARD OF DAMAGES —INTEREST.

In making an award of damages on account of excessive freight charges paid under protest, the Interstate Commerce Commission may properly allow interest.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 138; Dec. Dig. ⊛85.]

7. COSTS ⊛196—ACTION TO ENFORCE AWARD BY INTERSTATE COMMERCE COMMISSION—ALLOWANCE OF ATTORNEY'S FEE.

The reasonable attorney's fee authorized to be allowed in favor of the plaintiff in an action to enforce an award of damages made by the Interstate Commerce Commission, to be taxed as a part of the costs "if the petitioner shall finally prevail," should not be taxed, when error proceedings are taken, until they are determined.

[Ed. Note.—For other cases, see Costs, Cent. Dig. § 751; Dec. Dig. ⊛196.]

Sanborn, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of Arkansas; Jacob Trieber, Judge.

Action by the C. E. Ferguson Sawmill Company against the Missouri Pacific Railway Company, the St. Louis, Iron Mountain & Southern Railway Company, and others. Judgment for plaintiff, and defendants named bring error. Affirmed.

E. B. Kinsworthy, of Little Rock, Ark., and Henry G. Herbel and Fred. G. Wright, both of St. Louis, Mo., for plaintiffs in error.

John F. Clifford, of Little Rock, Ark., for defendant in error.

Before SANBORN, ADAMS, and CARLAND, Circuit Judges.

CARLAND, Circuit Judge. The Sawmill Company, hereafter called the plaintiff, brought this action against the St. Louis, Iron Mountain & Southern Railway Company and the Missouri Pacific Railway Company, hereafter called defendants, to recover the sum of $583.27, and interest thereon at 6 per cent. from September 1, 1911, being the amount of an award of damages allowed by the Interstate Commerce Commission, hereafter called Commission, for unjust and unreasonable freight rates paid by the plaintiff on cypress lumber in carloads from Little Rock and Woodson, Ark., to points in Oklahoma, Kansas, and Missouri. The Chicago, Rock Island & Pacific Railway Company, Union Pacific Railroad Company, Chicago, Burlington & Quincy Railroad Company, Missouri, Kansas & Texas Railway Company, and St. Louis & San Francisco Railroad Company were originally made defendants in the action, but were subsequently dismissed by the plaintiff. A jury being waived, the case was tried to the court.

[1] At the close of the trial judgment was rendered for plaintiff in the amount of the award of the Commission and interest, amounting in all to $717.17. As a part of the judgment the court allowed

an attorney's fee in the sum of $500. The defendants have brought the case here, alleging error. At the commencement of the trial counsel for defendants made a motion that the plaintiff be compelled to elect upon which order allowing reparation it would rely. The motion was denied, and an exception taken. In order to understand this motion, a brief statement is necessary.

The first petition in the proceeding which resulted in the award of reparation was filed by the plaintiff with the Commission August 31, 1909. The St. Louis, Iron Mountain & Southern Railway Company was the only defendant in this complaint. The plaintiff complained of what was called the Southwestern Line Tariff No. 50, effective August 3, 1909, which had been issued by said railway June 24, 1909, and which named a rate on cypress lumber from Little Rock and Woodson, Ark., to Kansas City, Mo., and other principal consuming points, of 24 cents per 100 pounds, being an advance of 8 cents over the previous tariff. The complaint alleged that the tariff rate complained of was unjust, discriminatory, and unduly prejudicial to the interests of the plaintiff. The complaint prayed that the Commission order the defendant to cease and desist from said violations of the Act to Regulate Commerce, and that it be required to establish and put in force a rate on cypress lumber from Little Rock and Woodson, as formerly carried in its Joint Freight Tariff No. 4929, and also that defendant be ordered to repay to complainant all sums paid by it for freight in excess of those rates which the Commission should determine to be reasonable and just.

May 2, 1910, the Commission made its report in the case, and found that the rates on cypress lumber in carloads from Little Rock and Woodson to points in Oklahoma, Kansas, and Missouri, located on the lines of defendant, were unjust and unreasonable, and that the maximum rates for the future between the points named should not exceed the rates set forth in a table attached to the report. The Commission said in its report that, if the plaintiff desired to question the reasonableness of rates to points on the lines of the Missouri Pacific Railway Company, said company should be made a party.

An order was duly made, condemning the rates complained of as unreasonable and unjust, and commanding the defendant to establish and put in force rates that the Commission decided to be reasonable. On June 27, 1910, the plaintiff filed a supplemental complaint which in no wise differed from the original complaint, except that the Missouri Pacific Railway Company, Chicago, Burlington & Quincy Railroad Company, Chicago, Rock Island & Pacific Railway Company, Missouri, Kansas & Texas Railway Company, St. Louis & San Francisco Railroad Company, and Union Pacific Railroad Company were made defendants. On April 1, 1912, the Interstate Commerce Commission made a supplemental report in the same case, after additional testimony had been taken and the other railroad companies made defendants. The supplemental complaint above referred to contained the same prayer as the original complaint. In its supplemental report the Commission adhered to its former decision and further ordered:

"That to enable the defendants to adjust the rates to points other than Kansas City in harmony with the Commission's report herein, and for the purpose of receiving proof upon which an order of reparation may be entered, the case be held open for such further action of the Commission as may be necessary."

On November 4, 1913, the Commission made an award in the case, finding the amount of reparation due to the plaintiff from the defendants in the supplemental complaint in the sum of $583.27, and interest thereon at the rate of 6 per cent. per annum from September 1, 1911. The award contained the usual order for the payment of the same. The present action was commenced for the purpose of recovering the award provided for in the order of November 4, 1913. About a year after the award had been made, and about four months after the commencement of the present action, the defendants applied to the Commission for an order modifying the order of November 4, 1913, as follows: The order last referred to contained a statement that the parties had filed an agreed statement of facts respecting the movement of the shipments involved and the amount of reparation due thereon. The defendants objected to the expression "agreed statement of facts," as they claimed that no such statement was made. On considering this application the Commission on November 25, 1914, made an order modifying its former order, and changing the recital therein as above mentioned, so that it read that by statements filed the parties have agreed as to the facts respecting the movement of the shipments involved and the amount of charges collected thereon. On the making of this modified order the plaintiff in the present action filed a supplemental complaint setting up in addition to the original order the modified order and the report of the Commission in connection therewith.

It will thus be seen that the defendants in the present action were asking the court to compel the plaintiff to elect as to whether it would rely upon the original order or the modified order. The motion to compel an election was properly overruled. There was only one order of reparation made by the Commission, and there was only one case before the Commission. It was proper that both reports and both orders be set forth in the complaint, that the true situation might be presented. In this connection it is claimed that the order of November 25, 1914, required an impossible date for the same to be performed by the defendants, in that it required the defendants to pay the award to plaintiff on or before December 15, 1913, a date nearly a year before the date of the order. This is a sample of many of the objections made at the trial. This confusion in dates occurred in this way: The original order of November 4, 1913, fixed the date of the payment of the award as December 15, 1913. The modifying order of November 25, 1914, did not change the date of the performance of the original order, but simply modified it in the respect that complaint was made by the defendants. The defendants had not complied with the original order and a suit was then pending to enforce it. The modified order was not a new order, which required a new date to be fixed for its performance, and the objection

has no merit. Moreover, this point was not presented to the court below.

[2] Counsel for defendants also moved to strike portions of the supplemental complaint relating to the supplemental order. This motion was rightly overruled for the reasons above stated. After the plaintiff had introduced in evidence the orders and reports of the ·Commission awarding damages, it called as a witness Mr. ·C. E. Ferguson, its president, for the purpose of showing that it had been actually damaged in the amount claimed, and the manner thereof. Counsel for defendants objected to the introduction of any evidence other than that produced before the Commission. This objection was overruled, and an exception taken. There is no merit in this contention. Section 16 of the Act to Regulate Commerce provides:

"Such suit in the Circuit [District] Court of the United States shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the Commission shall be prima facie evidence of the facts therein stated." Comp. St. 1913, § 8584, subd. 2.

It thus appears from the law itself that the suit must proceed in all · respects like other civil suits for damages, with no distinction.between it and such other actions for damages, except that the findings and order of the Commission shall be prima facie evidence of the facts therein stated. In Meeker v. Lehigh Valley Railroad Co., 236 U. S. 412, 35 Sup. Ct. 328, 59 L. Ed. 644, the Supreme Court declared with reference to this provision as follows:

"This provision only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most, therefore, it is merely a rule of evidence. It does not abridge the right of trial by jury, or take from any of its incidents. Nor does it in any wise work a denial of due process of law. In principle, it is not unlike the statutes in many of the states, whereby tax deeds are made prima facie evidence of the regularity of all of the proceedings upon which their validity depends."

See Meeker v. Lehigh Valley Railroad Co., a companion case, 236 U. S. 434, 35 Sup. Ct. 337, 59 L. Ed. 659; Western New York & P. R. Co. v. P. Refining Co., 137 Fed. 343, 70 C. C. A. 23.

In the case last mentioned numerous authorities are cited to support the position here taken. The purpose of placing Mr. Ferguson on the stand was to show that the shipments of lumber were made f. o. b. destination, and, although the consignees in the first instance paid the freight, it was charged back to the plaintiff on settlement of accounts.

[3] At the close of all the evidence counsel for the defendants requested the court to declare the law to be that the plaintiff was not entitled to recover. Under this head certain reasons why the request should be granted were stated. The trial court refused to declare the law as requested, and an exception was taken. It is first claimed that the Commission had no jurisdiction to make the award which it did for the reason (a) that the summons issued to the defendants required them to "satisfy the complaint or answer the same in writing within 20 days from this date." The summons was dated July

5, 1910. Section 13 of the act provides that after the filing of the petition the carrier "shall be called upon to satisfy the complaint or to answer the same in writing within a reasonable time, to be specified by the Commission." Comp. St. 1913, § 8581. Section 6 of the act provides:

"No change shall be made in the rates, fares, and charges or joint rates, fares, and charges which have been filed and published by any common carrier in compliance with the requirements of this section, except after thirty days' notice to the Commission and to the public published as aforesaid, which shall plainly state the changes proposed to be made in the schedule then in force and the time when the changed rates, fares, or charges will go into effect; and the proposed changes shall be shown by printing new schedules, or shall be plainly indicated upon the schedules in force at the time and kept open to public inspection: Provided, That the Commission may, in its discretion and for good cause shown, allow changes upon less than the notice herein specified." Comp. St. 1913, § 8569, subd. 3.

It is claimed that defendants could not have satisfied the complaint within 20 days by changing the rate, as the statute requires 30 days' notice of a change in rates. Under the law above quoted and the facts in this case there is no merit whatever in this contention: First, because, if the defendants desired to satisfy the complaint by changing the rate complained of, we must presume that the Commission would upon the request of defendants have allowed a change upon less than the regular notice; second, the record shows that the original petition was filed with the Commission August 31, 1909, and answer thereto was filed October 13, 1909. The supplemental complaint was filed June 27, 1910, received by defendants July 7, 1910, and answer filed August 22, 1910. In each instance, therefore, the defendants had 45 days in which to answer the original and supplemental complaints, respectively, and of course would have been allowed a longer time for good cause shown. No extension of time was asked for, and the defendants proceeded to try the case before the Commission without objection, and the objection now made was not heard of until it was made at the trial below. As a jurisdictional question the point made is frivolous.

(b) It is contended that the Commission had no authority to award reparation on shipments that moved prior to the date of filing plaintiff's complaint. This contention has no merit. The original complaint, as above stated, was filed August 31, 1909. It complained of a tariff effective August 3, 1909, alleging that the tariff was discriminatory, unduly prejudicial, and exorbitant, and prayed that the defendants be required to establish and put in force rates on cypress lumber from Little Rock and Woodson, Ark., as formerly carried in its Joint Freight Tariff No. 4929. The supplemental complaint alleged substantially the same facts. Each complaint prayed for reparation. The Commission in its report said that the complaint—

"alleges that defendant has *recently advanced* rates on cypress lumber from Woodson and Little Rock to points in Oklahoma, Kansas, and Missouri, over the rates which have been in effect for many years; that said advances are unreasonable in themselves and unjustly discriminatory against Woodson and Little Rock, and in favor of Memphis, Tenn., and other points east of

Little Rock. The prayer of the complaint is that the rates formerly in effect be restored and reparation made for all sums unlawfully collected."

The Commission, of course, could only establish a new rate for the future, but the very meaning of reparation is compensation for what has occurred. The plaintiff could not be injured until it had paid an excessive rate.

[4] (c) It is next claimed that, as no specific statement of the shipments on which reparation was claimed was filed with the Commission until October 31, 1913, the Commission had no authority to award reparation thereon as the same were barred by the statute of limitation, found in section 16 of the act and which reads as follows:

"All complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues, and not after."

The original complaint, filed as above, contained the prayer that has been heretofore quoted. The Commission and every other person connected with the case understood it to be a complaint for reparation, as well as for the establishment of just and reasonable rates. A specific statement of the particular shipments on which reparation was claimed is shown by the record to have been received by the Commission May 25, 1912. The defendants did not plead the statute of limitation before the Commission, but, on the contrary, received the specific statement of shipments, and held the same in their offices for about five months, finally returning the same to the Commission with the statement:

"Our claim department has checked this statement and finds same to be correct as to shipments moved and the charges collected, and basing same on the new rates ordered in by the Commission there would be an overcharge of $592.67; but this admission should not be construed that the complainant is entitled to reparation in this case."

This statement was signed by the general freight agent of the defendants. The defendants demanded no bill of particulars, or that the complaint be made more specific and certain, before the Commission. The statute provides that the filing of the complaint shall toll the statute. The record shows that 8 of the shipments moved in 1909, 15 moved in 1910, 5 in 1911, and 1 in 1912. We are of the opinion that under the facts shown in the record the claim for reparation was not barred.

(d) It is next claimed that, as the only evidence submitted before the Commission as to the payment of the freight charges were the expense bills given by the carriers to the consignees in whose name the bills ran, there was no evidence that plaintiff paid the freight. The case before the Commission was tried throughout by all parties on the theory that the plaintiff had paid the freight; but it becomes immaterial on a motion made in the present case that the plaintiff be nonsuited for the reason that the proof in the present action fully shows that the plaintiff paid the freight and suffered the damage.

[5] (e) Complaint is made that some of the shipments are shown by the record to have moved over the lines of other carriers than those which were parties before the Commission, and the proposition

is urged that the Commission had no power to condemn what is called one leg of a through rate. So far as this objection is concerned, the record shows that all the carriers over whose lines the shipments moved were made parties defendant before the Commission, except the Atchison, Topeka & Santa Fé and the Omaha Bridge & Terminal Railway Company. These carriers are connected with the shipments in controversy in this way. There were 12 shipments of lumber made over the lines of defendants to Council Bluffs, Iowa, on a through rate. It is shown, however, in the record, that the lumber was hauled from Omaha, Neb., across the river to Council Bluffs, Iowa, by the Omaha Bridge & Terminal Railway Company, that an arbitrary of $5 per carload was charged by the Terminal Company for hauling the freight across the river, and it is also shown that the defendants paid this sum on the 12 cars, the same being absorbed in the through rate. The plaintiff, however, seeks to recover nothing from the Terminal Company, and we must presume that the Commission considered all the circumstances including the payment of the arbitrary in fixing a reasonable rate for the future, and the amount of reparation to be paid by the defendants. The Terminal Company does not own any cars, its business is that of hauling cars belonging to other railroad companies, to and from industries on its tracks, and transferring such cars between various railroad companies entering the cities of Omaha, South Omaha, and Council Bluffs. The reasonableness of the rates of which complaint was made by the plaintiff before the Commission were in issue, and the defendants were parties before the Commission. To now assume that they did not present to the Commission the fact that they paid an arbitrary of $5 per carload at Omaha is to convict them of a grave inattention to business.

We now come to a carrier, however, who was not before the Commission, and who is not a defendant in this case. The connection of this carrier with the shipments in question arises in this way. There was one shipment of lumber from Woodson, Ark., to Girard, Kan. The shipment moved over the St. Louis, Iron Mountain & Southern Railway to Coffeyville, Kan., thence over the Missouri, Kansas & Texas to Chanute, thence over the Atchison, Topeka & Santa Fé to Girard. The total amount of the expense bill, roughly figured, was $103.80. Of this amount the Atchison received $17.30, the M., K. & T. $21.51, and the Iron Mountain $64.53. Each carrier received of the overcharge of 6 cents per 100 pounds, the same proportion which the total amount received by it bears to the total expense charged. This would result in the Atchison receiving about $3.50 of the overcharge and the M., K. & T., about $4.50. It goes without saying that, as the Atchison, Topeka & Santa Fé and the Missouri, Kansas & Texas were not parties to this action, no judgment can be rendered against them, and this little amount cannot be lawfully charged against the defendants.

We now come to the defendants in this case. The order granting the reparation reads thus:

"It is therefore ordered that the above-named defendants, in so far as they participated in this traffic, be and they are hereby notified and required

\* \* \* to pay unto complainant the sum of $583.27, with interest thereon at the rate of 6 per cent. per annum from September 1, 1911."

So that it appears the defendants are liable for such part of the overcharge as each received, and technically the judgment ought to have gone that way. But as no point is made about this we assume that, as the defendants are under the same management, it makes no difference to them that the amount of liability was not found separately.

It is claimed further that the judgment ought to have been for the defendants, for the reason that the Commission has overruled the principle of rate making upon which the order of reparation was based, and the cases of North-Bound Rates on Hardwood, 32 Interst. Com. R. 528, Southern Lumber Rates, 34 Interst. Com. R. 652, and North-Bound Rates on Hardwood, 34 Interst. Com. R. 708, are cited; but an examination of those cases convince that they did not have the effect of setting aside or overruling the order made in the present case. The complaint of the plaintiff referred to rates charged it as a lumber producer at Woodson, Ark., compared with shippers in its immediate neighborhood, and the Commission held that a blanket adjustment of rates which ignores so fundamental a principle as the geographical location of production can, with difficulty, be maintained in the face, of a result which compels a producer, with a 24-cent rate, to compete with a large number of neighboring producers enjoying an 18-cent rate. The cases referred to consider general rate-making schemes covering large sections of country involving several states.

[6] Complaint is made that the Commission had no authority to allow interest on the amount of the award. We decided in the case of D. & R. G. R. Co. v. Baer Bros., 209 Fed. 577, 126 C C. A. 399, that interest was allowable on excessive freight rates paid under protest, and interest has been allowed in similar cases. Meeker v. Lehigh Valley Ry. Co., 236 U. S. 412, 433, 35 Sup. Ct. 328, 59 L. Ed. 644; Meeker v. Lehigh Valley R. R. Co., 236 U. S. 434, 439, 35 Sup. Ct. 337, 59 L. Ed. 659; Baer Bros. Mer. Co. v. D. & R. G. Ry. Co., 233 U. S. 479, 491, 34 Sup. Ct. 641, 58 L. Ed. 1055; So. Ry. Co. v. St. Louis Hay & Grain Co., 153 Fed. 729, 82 C. C. A. 614.

[7] It is also objected that the court erred in allowing an exorbitant and excessive attorney's fee. Section 16 of the act provides:

"If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee to be taxed and collected as a part of the costs of the suit."

It appears, therefore, as matter of law, that the attorney fee was prematurely taxed, as it was not 'known when it was taxed whether the plaintiff would finally prevail or not.

As a result of a careful examination of the whole record, we are of the opinion that the judgment below must be affirmed as to the amount of reparation and interest; that as to the attorney fee it should be reversed. The amount of the award was about $9 less than the amount admitted to be due by the defendants, if they were liable at all, and they would hardly ask us to reverse a case for the small amounts of overcharge received by the Atchison and M., K. & T.

Let the judgment be affirmed, and the case remanded, with instructions to the trial court to tax a reasonable attorney's fee upon notice to the counsel of defendants.

SANBORN, Circuit Judge (dissenting).    With regret I find myself unable to concur in the opinion and conclusion of the majority in this case.

Section 13 of the Interstate Commerce Act (4 U. S. Comp. Stat. 1913, § 8581), requires a complaint to state briefly the facts on which the plaintiff relies for the relief it asks of the Commission, and directs the Commission to send to the defendant carrier a statement of the complaint and to call upon it to answer the complaint within a reasonable time.    It also provides that if the carrier, within the time specified by the Commission for the answer, makes reparation for the injury alleged in the complaint, it shall be relieved from liability for the violation complained of.    The Commission summoned the carrier to satisfy the complaint or to answer it within 20 days.    The carrier could not make reparation and satisfy the complaint in that way, because the complaint contained no statement whatever, either generally or specifically, of the amount of reparation sought.    The carrier could not satisfy the complaint within the 20 days by lowering the rate, of which complaint was made, because by section 6 of the act it was prohibited from making any change without 30 days' notice thereof, and the defendant was in this way deprived of its statutory right to satisfy the complaint and avoid an answer, and was compelled to answer without an opportunity to exercise that right.    To my mind it is not a persuasive answer to this fact that the grace of the Commission might have shortened the time for changing the rate, or that the grace of the complainant or that of the Commission permitted the defendant to answer after its right to answer was lost.    The opportunity to satisfy the complaint is a right independent of the will or grace of complainant or Commission.    It is no answer to the charge that one who has taken another's property without due process of law has deprived his victim of his right to that property to say that the taker has the power to return it to him, and may of his grace and good will do so.    An opportunity to satisfy the complaint, dependent on the will or discretion of the Commission, or of the complainant, lacks every element of the right secured to it by the statute, and the action of the Commission fixing 20 days as the time for answer, and summoning the defendant to satisfy the complaint or answer it within that time, seems to me absolutely to have deprived the carrier, under the circumstances of this case, of his statutory right to satisfy the complaint and thereby avoid answering it.

The act of Congress provides that:

"All complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues, and not after."    4 U. S. Comp. Stat. 1913, § 8584, subd. 2.

One of the rules of the Commission requires that:

"If reparation is sought, the petition or an exhibit thereto should set out in detail the shipments involved showing origin, destination, date, number and initials of cars, weight, rate paid, rate claimed and reparation claimed."

And the record discloses the fact that on October 29, 1909, one of the examiners of the Commission gave notice to the complainant of this rule, that no damages in reparation could be recovered under this complaint "which alleged no amounts of damages, or times or places when such damages were incurred whatever," and that if it desired to recover such damages it must file a supplemental complaint therefor and set them forth. Neither in the original complaint nor in the supplemental complaint making new parties did the complainant allege any amount or amounts that it had paid or lost, or any amount or amounts that it claimed; nor did it ever allege or claim any such amount or amounts in any complaint or pleading until it filed with the Commission a statement of its claims for reparation for the first time on October 31, 1913, although, as stated in the opinion of the majority, the Commission on May 25, 1912, received and sent to the defendants a statement of claims which the defendants returned with the admission that the shipments there mentioned moved and that the charges there made were collected. But it will be noticed that this admission contained these words:

"But this admission should not be construed that the complainant is entitled to reparation in this case."

It is true that the complaints made prior to October 31, 1913, contained prayers for a change of the rate for which a cause of action was stated and for reparation. But none of these complaints stated any facts whatever constituting any cause of action for any reparation, none of them stated any facts which would have entitled the plaintiff to introduce any evidence whatever of any damages, nor did the plaintiff ever state in any manner any such facts or cause of action until October 31, 1913. Because no such cause of action and no such facts were ever pleaded or alleged prior to October 31, 1913, I am unable to resist the conclusion that then for the first time was any complaint for the recovery of any damages claimed in this case filed with the Commission within the fair and just meaning of the statute, and as the causes of action for all the damages recovered in this action, except $20.72, accrued more than two years prior to that date, the recovery of those damages seems to me to be barred by the act of Congress. Even if the time when the statement of May 25, 1912, was received by the Commission could be deemed the time of the filing of a complaint for these damages, yet all damages accruing prior to May 25, 1910, would be barred, and $324.89 of the amount recovered is for such damages.

Nor does it seem to me that where, as in this case, no cause of action for any damages whatever was alleged in the earlier complaint, the failure of the defendants prior to the filing of a complaint for the damages to demand a bill of particulars can deprive them of any right or privilege. As no cause of action for damages was stated in those earlier complaints, there was no claim for damages to particularize, and as the Supreme Court of Missouri said in Mallinckrodt Chemical Co. v. Nemnich, 169 Mo. 388, 397, 69 S. W. 355:

"Nor will it do to say that defendant should have moved to have made the pleading more definite and certain. He might indeed have done this, but was

not compelled to do so. The primary duty of making the pleading definite and certain is on the party drawing the pleading, and he cannot, by his remissness, cast on his opponent the onus of doing what his own duty demands."

Where a complainant fails utterly to state any facts upon which a cause of action can be based, a cause of action may not be created by the failure of the defendant to demand a bill of particulars.

Finally, the rate established by the Commission, on which these claims for reparation are founded, was unjust and unreasonable, and it seems to me that the Commission itself, in later cases, has in effect so decided. 32 Interst. Com. R. 528; 34 Interst. Com. R. 708; 34 Interst. Com. R. 652.