## ARCADIA MILLS et al. v. CAROLINA, C. & O. RY. et al.

(District Court, W. D. South Carolina. June 17, 1922.)

No. 289.

1. **Commerce ⬅87—Award of reparations by Interstate Commerce Commission held not barred by limitation.**

Under the provision of Interstate Commerce Act, § 16, as amended by Act June 29, 1906, § 5, being Comp. St. § 8584 (2), that "all complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues, and not after," a complaint of unjust rates charged, filed by a voluntary association of manufacturers on behalf of its members, a list of whom is attached, gave the Commission jurisdiction to award reparation, though specific evidence on which to base awards to the several members was not submitted within the two years, and not until after a determination by the Commission that the rates were unjust and unreasonable.

2. **Commerce ⬅87—Time of federal control excluded in computing limitation period for filing reparation claims.**

Under Transportation Act 1920, § 206f, the period of federal control is to be excluded in computing the period of limitation for filing claims for reparation with the Interstate Commerce Commission, though the limitation period had expired before the act was passed.

At Law. Action by the Arcadia Mills and others against the Carolina, Clinchfield & Ohio Railway and others. On demurrer to complaint. Overruled.

Ellis, Harrison, Ferguson & Ellis, of Washington, D. C. (Wade H. Ellis, Challen B. Ellis, and O. E. Harrison, all of Washington, D. C., of counsel), for plaintiffs.

Claudian B. Northrop, of Chevy Chase, Md., Frank W. Gwathmey, of Washington, D. C., and Bonham & Price and Dean, Cothran & Wyche, all of Greenville, S. C. (Charles J. Rixey, Jr., of Washington, D. C., of counsel), for defendants.

KNAPP, Circuit Judge. This suit is brought to enforce an order of the Interstate Commerce Commission, awarding reparation to plaintiffs for excessive and unreasonable rates paid by them on shipments of coal. The case is before the court on demurrer to the complaint, and these facts appear:

In February, 1913, the Cotton Manufacturers' Association of South Carolina, a voluntary association of manufacturers of cotton products in that state, filed a complaint with the Interstate Commerce Commission, docket No. 5504, "in the name of said association, acting therein for its members," against the defendant railroads and other carriers, alleging that the rates on bituminous coal in carloads from mines on the Carolina, Clinchfield & Ohio Railway and the Virginia & Southwestern Railway, designated as "Southwestern Virginia mines," to Spartanburg and other destinations in South Carolina, were, and had been for more than two years, unjust, unreasonable, and excessive, in violation of section 1 of the Act to Regulate Commerce (Comp. St. § 8563), to the extent of 10 cents a ton. A list of the members of the

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

association, including the plaintiffs, with their respective addresses, was attached to the complaint. The establishment of just and reasonable rates for the future was prayed, and it was also prayed:

"That reparation in damages be granted to those represented by complainant, and other shippers similarly situated, against the defendants herein named and each of them, jointly and severally, as to each and all of the shipments under the rates herein complained of, in which the defendants participated, in the amount and to the extent that the charges so exacted and collected by said defendants exceeded the rates and charges that may be found and prescribed by this honorable Commission to be just, reasonable, and equal."

It appears that this complaint, with others of like character, was merged in a general investigation of coal rates in that section of the country, docket No. 6324, as a result of which the Commission, under date of December 31, 1915, held and decided that the rates here in question were unjust and unreasonable to the extent of 10 cents a ton. There was no specific finding as to the reasonableness of those rates in the past—that is, prior to its report—and as to reparation the Commission said:

"Under the circumstances, and in view of the nature of this proceeding, the prayers for reparation in the several petitions involved herein will be denied." Bituminous Coal Rates to the Southeast, 37 Interst. Com. Com'n R. 652.

Thereafter, in April, 1916, a supplemental complaint was filed, which recited the proceedings above outlined, alleged that members of the association were entitled to reparation for rates paid by them which had been found to be unreasonable, and prayed the Commission to reconsider its opinion that reparation should be denied, in so far as demanded in the original complaint, and—

"award reparation to complainant's members on account of all their shipments moving since the filing of the complaint in No. 5504, to the extent of the charges paid by them severally, in excess of the rates found by the Commission to be just, reasonable, and equal, that is to say, 10 cents a ton, and that they be permitted to submit competent evidence showing in detail the shipments made by them severally, and the payment of the excessive freight charges, and the extent of the damages suffered by them in consequence thereof, for which they claim reparation."

By decision rendered under date of July 5, 1919 (Cotton Mfrs.' Ass'n of S. C. v. C., C. & O. Ry., 53 Interst. Com. Com'n R. 741), the Commission modified its prior ruling, and held that members of the association were entitled to reparation, to the extent of 10 cents a ton, on shipments made by them between December 31, 1915, the date of the original order, and August 22, 1916, the date when the reduced rates went into effect. In this decision, among other things, it was said:

"Upon further consideration we are of opinion, and find, that between December 31, 1915, and the date the rates prescribed in our original decision became effective, the rates assailed were unreasonable to the extent that they exceeded the rates contemporaneously in effect from the Coal Creek district of Tennessee to the same destinations. We further find that, in so far as complainant's members specified in the complaint made during the above period shipments of bituminous coal, in carloads, from and to the points in question, and paid and bore the charges thereon, they have been damaged to the extent of the difference between the charges paid and those that would have accrued at the rates herein found reasonable, and that they are entitled

to reparation, with interest. The exact amount of reparation due cannot be determined on the present record, and complainant's members enumerated in the complaint should prepare statements showing the details of the shipments in accordance with rule V of the Rules of Practice, also specifying the dates on which the charges were paid. These statements, which should be accompanied with appropriate proof that the charges on the shipments were paid and borne by the claimants, should be submitted to defendants for verification. Upon receipt of statements so prepared and verified, we will consider the entry of an order awarding reparation."

Pursuant to this direction statements were prepared and submitted, showing the several shipments made by members of the association during the period named, and the respective dates on which the freight charges were paid by them, which statements were checked and verified by defendants. Thereupon, on March 9, 1920, the Commission issued the order of reparation which this suit is brought to enforce.

[1] The complaint is demurred to on various grounds, but the only one relied upon, and the only one that needs to be considered, is that the Commission was without jurisdiction to make the order. This contention is based on the following provision in section 16 of the act, as amended June 29, 1906:

"All complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues, and not after." Comp. St. § 8584.

And the argument in brief is that the Commission had no authority to make the order, because the statements above described, showing when and by whom, and on what shipments, and in what amounts, payments had been made, were not filed with the Commission or otherwise incorporated in the complaint until more than two years after the shipments were carried and the excessive charges collected. In other words, defendants say that, while the original complaint of the association was sufficient to authorize the Commission to investigate and condemn the rate then in force, and to determine what would be a reasonable rate for the future, it was wholly insufficient as a complaint "for the recovery of damages" by members of the association, for want of alleging any facts upon which damages could be ascertained and awarded.

However plausible this contention may at first appear, I am persuaded that it will not stand the test of close examination. It misconceives the nature of the action and the functions of the Commission. The suit is brought under section 16 of the Act to Regulate Commerce, to recover damages for a violation of that act. It is an action sounding in tort, and one in which complainants may avail themselves of a statutory provision which merely establishes a rule of evidence. A shipper could always bring suit against a carrier for failure to perform its public duty. The act in question simply provides a method of procedure whereby the tribunal charged with its administration may ascertain the damages which the shipper has suffered, and further provides that the findings and order of that tribunal "shall be prima facie evidence of the facts therein stated." As the Supreme Court says in Meeker v. Lehigh Valley R. R., 236 U. S. 412, 430; 35 Sup. Ct. 328, 335 (59 L. Ed. 644, Ann. Cas. 1916B, 691):

293 F.—41

"This provision only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most, therefore, it is merely a rule of evidence. It does not abridge the right of trial by jury or take away any of its incidents. Nor does it in any wise work a denial of due process of law."

Since an order of the Commission is prima facie evidence of the facts therein stated, it follows that the complaint in a suit to enforce its order need only allege the ultimate facts necessary to show that the plaintiff has a right of action, and that the evidential facts need not be pleaded. Mills v. Lehigh Valley R. R., 238 U. S. 473, 35 Sup. Ct. 888, 59 L. Ed. 1414. Moreover, the Commission is not restricted, as are the courts, by the limitations of procedural law, and the simplest of pleadings is sufficient to invoke its action. It is empowered to "make or amend such general rules or orders as may be requisite for the order and regulation of proceedings before it," and to "conduct its proceedings in such manner as will best conduce to the proper dispatch of business and to the ends of justice." Section 17 (Comp. St. § 8586). If, therefore, its order in a given case be within the scope of its authority, and the proceeding in which the order is made be conducted in accordance with the rules which it has adopted, the courts will hold the order valid and enforce it by appropriate decree.

The order sued on seems to be in that category. It is precisely such an order as the Commission is authorized to make, if the facts warrant, and the proceeding of which it is an outcome was begun and carried on in conformity with the Commission's rules. It is the filing of a complaint within two years after the cause of action accrues that gives the Commission jurisdiction to award reparation. And no good reason is perceived why that jurisdiction should not be held to continue, when the complaint demands reparation, until the Commission has determined whether reparation will be allowed, although more than two years may pass before a decision is rendered, and before detailed proofs of the quantum of damage are submitted. Indeed, it is difficult to see how such proofs can be intelligently prepared until it is known on what basis and for what period reparation will be awarded.

In construing a remedial statute, much regard must be had for the needs of practical and efficient administration. In order that a shipper may get reparation, the Commission must not only condemn the rate complained of, and prescribe a lower rate for the future, but must also determine whether it will award reparation at all, and, if so, then to what extent and for what time. Until those questions are decided, there is no basis for computing the amount to which the shipper is entitled. For this reason proofs of particular shipments and payments, filed in advance of such decision, might and often would turn out to be of no value, and serve only to incumber the files of the Commission with a mass of worthless exhibits.

This is well illustrated by the instant case. The original complaint of the association, filed on behalf of its members, contained full and definite allegations. It described the commodity involved, named the points of origin and destination, stated the rates in force and the extent to which they were claimed to be unlawful, and included the prayer

for reparation above quoted. The Commission and all parties to the proceeding understood that reparation would be demanded if the charge of unreasonableness was sustained. It is manifest, however, that if statements of individual shipments and charges paid by members of the association had been filed with the complaint, or within two years thereafter, as defendants now assert was necessary to the Commission's jurisdiction to award reparation, such statements would have been wholly valueless and unusable, for the Commission's report in the general investigation, with which this complaint was merged, was not promulgated until December 31, 1915, nearly three years afterwards, and that report rejected all claims for reparation.

The same may be said of the supplemental complaint of April, 1916, which is the basis of the reparation order. Again there was a specific demand for reparation to members of the association, based on the reduced rate which the Commission had ordered, with the request "that they be permitted to submit competent evidence showing in detail the shipments made by them severally and the payment of the excessive freight charges;" and again it may be said that if such evidence had been submitted at that time, or within two years afterwards, in support of the claim for reparation then made, it would have been a useless and futile proceeding, for the most part, if not altogether, since it was not and could not be known until the Commission rendered its decision in July, 1919, more than three years later, whether any reparation would be allowed, or, if allowed at all, for what prior period. With reasonable promptness after this decision, and in conformity therewith, the expense accounts of members of the association, including these plaintiffs, showing the shipments made and excess charges severally paid by them during the time for which reparation was granted, namely, from December 31, 1915, to August 22, 1916, were prepared and submitted to defendants, checked up, and found correct by them, and then filed with the Commission, in accordance with its direction, without objection on the part of defendant that they had not been presented within two years after the filing of the supplemental complaint. To this it may be added that the report and order of the Commission of December 31, 1915, put defendants upon notice that the exaction of higher rates than were then prescribed would as a matter of course be the subject of complaint and demand for reparation; and they justly cannot be permitted, on the technical ground now advanced, to escape liability for excess charges collected after that date, when they were apprised by the supplemental complaint that reparation for such charges was demanded, when full information in regard thereto was furnished by their own records, and especially when no objection was made at the time the expense accounts were submitted, either before the Commission or otherwise, because they were not presented until more than two years after the charges had been paid.

In short, I am convinced that the mode or order of procedure which the Commission has prescribed, and which was followed in this case, is not only appropriate, in that it is suited to the nature of the subject-matter dealt with, but that it is practically essential to the orderly and efficient discharge of the Commission's duties; and I am also convinced

that it satisfies every requirement of the statute, which provides that "complaints for the recovery of damages shall be filed with the Commission within two years from the. time the cause of action accrues, and not after." If the complaint, which assails a rate as unreasonable or unjustly discriminatory, also contains such a prayer for reparation as will fairly inform the carrier of the claim made in that regard, the Commission has jurisdiction to award reparation in that proceeding for excessive rates collected during the period from two years before the complaint was filed to the date when the rate fixed by the Commission goes into effect, although its decision of the main question in favor of the shipper, which must precede any award of reparation, be not made until more than two years after the filing of the complaint, and proofs of particular shipments, showing payment of freight charges within two years from that date, are not submitted until such decision is rendered. To hold otherwise is to give the limiting statute a construction which would upset a long-standing and recognized practice, and put upon the shipper in many cases a wholly unnecessary burden of expense, without the slightest benefit to the carrier.

The precise question here involved was decided adversely to defendants' contention in Missouri Pac. Ry. Co. v. Ferguson Sawmill Co., 235 Fed. 474, 480, 149 C. C. A. 20, 26, where the ruling of the court is stated in the fourth syllabus as follows:

"Interstate Commerce Act Feb. 4, 1887, § 16, as amended by Act June 29, 1906, § 5 (Comp. St. 1913, § 8584, subd. 2), relating to awards of damages by the Interstate Commerce Commission, provides that 'all complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues and not after.' Held, that the filing of a complaint within such time, asking a modification of a rate and generally for reparation for all sums unlawfully collected, was a compliance with such requirement and authorized the Commission to make an award of damages, although the complaint contained no specific statement of the shipments on which reparation was claimed and such statement was not filed until more than two years thereafter and after a hearing as to the legality of the rate complained of, where no objection was made on that ground before the Commission."

Other decisions which tend to the same conclusion are Meeker v. Lehigh Valley R. Co., supra; Mills v. Lehigh Valley R. Co., supra; Spiller v. Atchison, T. & S. F. Ry. Co., 253 U. S. 117, 40 Sup. Ct. 466, 64 L. Ed. 810; Vicksburg, S. & P. Ry. Co. v. Anderson-Tully Co. (C. C. A.) 261 Fed. 741; Markle Co. v. Lehigh Valley R. Co. (D. C.) 271 Fed. 989, affirmed in Lehigh Valley R. Co. v. Markle Co. (C. C. A.) 279 Fed. 261.

The cases cited by defendants are not believed to be in conflict with the views above expressed. Phillips Co. v. Grand Trunk Ry., 236 U. S. 662, 35 Sup. Ct. 444, 59 L. Ed. 774, the only one arising under the Commerce Act or otherwise analogous, is clearly distinguishable. Phillips was not a party to the complaint, or represented at the hearing before the Commission, nor was he located on or served by either of the defendant lines, and nothing appeared at any stage of the proceeding to even suggest that he had or would make a claim for reparation. In this case the plaintiffs, with other members of the association, were parties to the original as well as the supplemental complaint, in both

of which there was a distinct demand for reparation. In other words, these plaintiffs filed a complaint with the Commission—the supplemental complaint of April, 1916—within two years from the time their cause of action accrued, and that complaint gave the Commission jurisdiction to make the reparation order which they seek to enforce. The other cases cited do not appear to have any material bearing upon the question here considered.

[2] It remains to state briefly another ground upon which the demurrer must be overruled, even if defendants' theory of the statute of limitations be accepted. The Transportation Act approved February 28, 1920, contains the following:

Section 206 (f). "The period of federal control shall not be computed as a part of the periods of limitation in actions against carriers or in claims for reparation to the Commission for causes of action arising prior to federal control." 41 Stat. 462.

The period of federal control extended from January 1, 1918, to March 1, 1920, or 26 months. The period for which reparation was ordered extended from December 31, 1915, to August 22, 1916, and therefore the "cause of action" arose prior to federal control. Defendants contend, as above recited, that the Commission had no jurisdiction to make the order of reparation, because detailed proofs of shipments by members of the association, with dates of payment therefor, were not presented within 2 years after the excess charges were paid. It does not appear just when these proofs were submitted, but it was certainly before the reparation order of March 9, 1920. As the excess charges were not paid until the shipments moved—that is, between December 31, 1915 and August 22, 1916—the interval between payment and proof must have been less than 4 years and 2 months, except possibly in negligible instances. Deduction of the 26 months of federal control, which the Transportation Act says "shall not be computed," reduces the interval to less than 2 years, in most, if not all, cases, and brings it within the time fixed by the limiting provision. The language of the suspending act is explicit, the facts conceded by the demurrer are clearly within its terms, and I see no escape from the conclusion to which it leads.

If it be objected that the limiting statute had run, and the claims in question therefore barred, before the Transportation Act was passed, it is sufficient for answer to cite the case of Campbell v. Holt, 115 U. S. 620, 6 Sup. Ct. 209, 29 L. Ed. 483, which is directly in point and decisive.

An order will be entered overruling the demurrer, with leave to the defendants to answer, if they be so advised, within 30 days.