## EMPIRE REFINING CO. v. DAVIS, Director General.

(District Court, E. D. Oklahoma. March, 1925.)

No. 4049.

**1. Commerce ⬤=88 — Decisions of Interstate Commerce Commission respecting tariffs are helpful guidance to courts.**

Decisions of Interstate Commerce Commission relating to construction of tariffs are helpful guidance to courts in arriving at correct conclusions in such matters.

**2. Carriers ⬤=30—Publication by initial carrier of method of determining through rate held binding on it.**

Publication by initial carrier of rule for computation of rate on through shipment of gasoline, constructed from combination of separately established rates, *held* binding on it, notwithstanding tariff of connecting carrier did not contain such rule, especially where this merely carried out Director General's intention.

**3. United States ⬤=111—Assignment statute inapplicable to claims against railroad by corporation merging with assignee.**

Assignment of corporation's claim against Director General of Railroads on reparation award to another corporation, into which assignor merged, was not violative of Rev. St. § 3477 (Comp. St. § 6383), relative to assignments of claims against the United States, in view of Federal Control Act, § 10 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾j), notwithstanding action was brought under Transportation Act, § 206 (Comp. St. Ann. Supp. 1923, § 10071¼cc), after termination of federal control, since Federal Control Act and Transportation Act must be construed together.

**4. Railroads ⬤=5½, New, vol. 6A Key-No. Series—Federal Control Act held to authorize imposition of costs against Director General.**

Provision of Federal Control Act (Comp. St. 1918, Comp. St. Ann. Supp. 1918, § 3115¾a et seq.) that no defense shall be made in actions at law, or suits in equity, on ground that carrier is instrumentality of federal government, authorizes imposition of costs and attorney's fees against Director General in action on reparation award, under Interstate Commerce Act, § 16 (Comp. St. § 8584).

**5. Costs ⬤=196—Costs, including attorney's fees not taxed until judgment becomes final.**

Taxation of costs, including reasonable attorney's fees, under Interstate Commerce Act, § 16 (Comp. St. § 8584) in favor of plaintiff, suing to enforce award of Interstate Commerce Commission, should not be made until judgment becomes final.

At Law. Action by the Empire Refining Company against James C. Davis, Director General. Judgment for plaintiff.

Warren T. Spies, of Bartlesville, Okl., for plaintiff.

W. L. Curtis, of Ft. Smith, Ark., for defendant.

KENNAMER, District Judge. This action is upon a reparation award made by the Interstate Commerce Commission in the sum of $64.32, covering an overcharge in freight rates. The shipment was a car of gasoline shipped on September 9, 1918 (during federal control) from Independence, Kan., to Lincolnton, N. C. It moved over the Missouri Pacific Railroad to Memphis, Tenn., over the St. Louis & San Francisco to Birmingham, Ala., and thence by the Seaboard Air Line to Lincolnton, N. C. The Director General collected on the shipment a total rate of 83 cents per 100 pounds, which was made up of two factors, viz. a rate of 23½ cents from Independence to Memphis, and a rate of 59½ cents from Memphis to Lincolnton. On June 24, 1918, the published rates in effect between said points on gasoline were, between Independence and Memphis, 19 cents, and between Memphis and Lincolnton, 47½ cents, which in combination made a total of 66½ cents. On June 25, 1918, by a general order the Director General advanced the freight rate on gasoline 25 per cent. This advance made the rate from Independence to Memphis 19 cents, and that from Memphis to Lincolnton 59½ cents. Shortly after the promulgation of the said order advancing rates, the Director General, by his Freight Rate Authority No. 96, instructed the carriers to change the advance of 25 per cent. to a flat advance of 4½ cents. By a supplement to Boyd's Tariff, which published the rate from Independence to Memphis, the change was made in that rate, which made the rate 23½ cents. At the time this shipment moved, Washburn's Tariff, which published the rate from Memphis to Lincolnton, had not been corrected to comply with the last order of the Director General, and the published rate remained 59½ cents.

The Interstate Commerce Commission found that the Director General overcharged on this shipment, and that the proper rate to be charged and collected was 71 cents, made up of 19 cents to Memphis and 47½ cents thence to Lincolnton (the respective rates in force on June 24, 1918), plus an increase of 4½ cents. The Commission's holding was based upon a provision of Boyd's Tariff publishing the rate from Independence to Memphis, which stated that, when the total charges on a through continuous movement of petroleum and its products, including gasoline, are constructed by combination of separately established rates applying to and from junction points, first determine the through combination of rates in effect on June 24, 1918, and then increase such combination of rates 4.5 cents.

The tariff publishing the rate from Memphis to Lincolnton contained no similar provision, and no reference is made in same to Boyd's Tariff. Because said tariff does not contain a combination rule, and makes no reference to Boyd's Tariff, it is the contention of the Director General that the legal and correct through combination rate between Independence and Lincolnton on this shipment is the local rate from Independence to Memphis of 23½ cents, plus the local rate from Memphis to Lincolnton of 59½ cents, or a total of 83 cents, which was the rate collected. It is the theory of the Director General, as stated in his brief, that in constructing a through rate, by combining the local rates contained in one tariff with the local rates contained in another, such through combination rate cannot be changed in any way by any rule or regulation not actually contained in both tariffs, or made a part of both tariffs by cross-reference, in view of Tariff Circular No. 18–A of the Commission, promulgating certain rules with respect to the publication of tariffs.

No authority, either by decision of the Commission or the courts, is cited in support of this position by the Director General. On the other hand, many decisions of the Commission are cited by plaintiff which uphold the decision made by the Commission in making this award; the ruling case apparently being that of Sligo Iron Store Co. v. Western Maryland R. Co., 62 Interst. Com. Com'n R. 643, on rehearing 73 Interst. Com. Com'n R. 551. In that case, as in the present award, the Commission held that the publication of the combination rule in the tariff of the carrier on whose line the shipment originated was a holding out of a manner of making combination rates on through shipments which that carrier must protect.

[1] The technical subject of tariff construction is one which ordinarily the Commission, because of its composition of members with special experience, knowledge, and training in that subject, is better able to correctly solve than the courts; and its decisions are a helpful guidance to the courts in arriving at correct conclusions in such matters. Davis v. Prairie Pipe Line Co. (C. C. A.) 298 F. 393. Apparently the decision of the Commission in this award is correct, and un-

less some authority or good reason is offered to the contrary it should be sustained.

[2] It would seem that the Commission found that the correct published through combination rate between Independence and Lincolnton was 71 cents, by reason of the provision in Boyd's Tariff, which published the rates for the initial carrier, that in fixing such through combination rate, composed of separately established rates as factors, the through combination of rates in effect on June 24, 1918, should be determined, and then a flat increase of 4½ cents added to their total. As a matter of fair legal construction, this appeals as a correct rule. In other words, when the shipper consulted the tariffs to determine the rates, he found that the initial carrier held out and published to him that the total rate from Independence to Lincolnton would be a combination of the local rates in effect between Independence and Memphis, of 19 cents, and between Memphis and Lincolnton, of 47½ cents, with an addition of the flat increase of 4½ cents. As a matter of justice, this construction is also appealing, for the Director General admits the effect of his Freight Rate Authority No. 96 was to place such total rate between said points in effect, if the publication had been properly made by provision in the Washburn Tariff publishing the rates between Memphis and Lincolnton. Of course, in determining as a matter of law as to what was the published rate, the Commission held that the provision of Boyd's Tariff as to through combination rates over lines of connecting carriers was binding on the initial carrier. And certainly it should be, for it was merely putting into effect the intention of the Director General as to what should be the proper rate.

The above disposes of the first two contentions of the defendant as to error in the finding of the Commission that the plaintiff's assignor was entitled to an award of reparation for overcharge in rates.

[3] A third contention of the defendant is that the plaintiff cannot maintain its suit, because it is based upon an assignment of the claim of the Standard Asphalt & Refining Company, in whose favor the award was made by the Commission, and that such assignment is in contravention of section 3477 of the Revised Statutes of the United States (Comp. St. § 6383). The plaintiff owned all the shares of stock of the Standard Asphalt & Refining Company, a corporation, which became inactive and transferred all its properties and assets to said parent company. The authorities cited by plaintiff in its brief,

especially Seaboard Air Line Ry. v. United States, 256 U. S. 655, 41 S. Ct. 611, 65 L. Ed. 1149, are to the effect that such an assignment would not be violative of said section 3477, as the same does not inhibit assignments resulting from the orderly merger or consolidation of corporations. The argument and authorities of plaintiff are convincing on this proposition. Again, plaintiff cites authorities to the effect that claims against the Railroad Administration growing out of federal control are not to be considered as ordinary claims against the United States, but following the spirit of the Federal Control Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾ et seq.), and particularly section 10 thereof, such claims are assignable. There appears to be good authority for this contention. Plaintiff cites rulings of the Interstate Commerce Commission, decisions of the Municipal Court in the City of New York, and Morgan v. Hines, 65 Mont. 306, 211 P. 778.

There are two additional authorities, not cited in either of the briefs of the parties, which uphold this position of plaintiff. They are Parrington v. Davis, 285 F. 741, by Judge Wolverton, in the United States District Court of Oregon, and Weiss v. Davis (Mass.) 144 N. E. 765, a very recent case. Judge Wolverton bases his opinion upon the provisions of the Federal Control Act authorizing suits to be brought against the carriers, and providing that no defense shall be made thereto upon the ground that the carrier is an instrumentality of the federal government. In both the last-cited cases, the suits were brought since the termination of federal control, and under authority of section 206 of the Transportation Act (Comp. St. Ann. Supp. 1923, § 10071¼cc), which defendant insists contains nothing in the way of consent of the United States to waive section 3477 as to assignment of claims. Defendant cites a case said to be decided in the United States District Court at San Francisco, entitled Hanavan v. Davis, wherein, on April 24, 1914, the court held to the contrary of the above decisions. Nothing but a short excerpt is given in the brief, and the case was evidently not reported, so it is of little weight against the other well-considered authorities.

Considering the spirit of the Federal Control Act was to preserve all the existing rights and remedies against the carriers under federal control, with full consent of the government to sue thereupon to the same extent as before federal control, it would seem that the authorities holding that claims

against the Railroad Administration were assignable are clearly correct in point of reason. Defendant argues that section 10 of the Federal Control Act has no application here, since this action was brought after the termination of federal control, under authority of section 206 of the Transportation Act of 1920. We think the two acts must be construed together, and that the only change made in the Transportation Act was to provide an agent against whom the suits should be brought. Under either act, the suit was in effect a suit against the government, and the government consented that suits could be maintained against it, and it should be subject to all laws and liabilities imposed on common carriers prior to control, except so far as the same might be inconsistent with the provisions of the acts relating to such control. Such claims being assignable prior to federal control, clearly it was the intention of the United States not to prohibit assignments of claims accruing under federal control. An examination of the several acts of Congress is convincing that the authorities cited are correctly reasoned, and that the claim in the instant case is one which is assignable.

[4] The fourth and last contention of the Director General is that, being a branch of the United States government, he is not liable for attorney's fees and costs in this action. He seeks to avoid the provision of section 16 of the Interstate Commerce Act (Comp. St. § 8584), which provides for the taxing of costs and reasonable attorney's fee as a part thereof in case the petitioner prevails in such actions. The argument and authorities of plaintiff on this point in his brief are clearly sufficient to refute this contention of the defendant. The same argument may be made here as made on the question of the assignment of the claim not being within the purview of section 3477, supra, dealing with the assignment of claims against the United States. Plaintiff quotes from the case of Missouri Pac. R. Co. v. Ault, 256 U. S. 554, 41 S. Ct. 593, 65 L. Ed. 1087, holding that, by the provisions of the Federal Control Act, the government was to operate the carriers, but the usual immunity of the sovereign from legal liability was not to prevent the enforcement of liabilities ordinarily incident to the operation of carriers. It would appear that the provision of the Federal Control Act, viz.: "Actions at law or suits in equity may be brought by and against such carriers and judgments rendered as now provided by law; and in any action at law or suit in equity against the car-

rier, no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government." (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115¾j.)—is clearly broad enough in its terms to authorize the imposition of costs and attorney's fees in an action brought upon a cause arising under federal control, by reason of the terms of the Interstate Commerce Act above cited, the same as if the action had been brought prior to federal control.

[5] The plaintiff should prevail in this case, and judgment should be rendered for the amount of the award made by the Interstate Commerce Commission, with interest and costs, which should include a reasonable attorney's fee, but the actual taxing of the costs should not be made until the judgment becomes final. This is suggested by plaintiff's brief, and he states there is a case of the Circuit Court of Appeals of this circuit so holding, but which he has been unable to locate. The case he had in mind is probably that of Missouri Pac. R. Co. v. C. E. Ferguson Sawmill Co., 235 F. 474, loc. cit. 483, 149 C. C. A. 20, 29. Paragraph 7 of the syllabus is as follows: "The reasonable attorney's fee authorized to be allowed in favor of the plaintiff in an action to enforce an award of damages made by the Interstate Commerce Commission, to be taxed as a part of the costs 'if the petitioner shall finally prevail,' should not be taxed, when error proceedings are taken, until they are determined."

Let decree be entered for plaintiff.