### LOUISVILLE & N. R. CO. v. SLOSS-SHEFFIELD STEEL & IRON CO.

(Circuit Court of Appeals, Fifth Circuit.    October 31, 1923.    Rehearing Denied December 11, 1923.)

1. **Commerce ⬤═86—Formality in pleading and practice not required in proceedings before Interstate Commerce Commission.**

   The validity of the action of the Interstate Commerce Commission is not dependent on compliance with the procedural rules of pleading and practice which prevail in courts of law.

2. **Commerce ⬤═87—Petition held sufficient to authorize award of reparations by Commission after date of its filing.**

   A petition by shippers, complaining of unjust and unreasonable rates, and containing a general prayer for reparations, *held* sufficient to give the Interstate Commerce Commission jurisdiction to award reparations on account of shipments made after, as well as before, the filing of the petition.

3. **Commerce ⬤═85—Order of Commission awarding reparations held within its jurisdiction.**

   During the interval between a finding and order of the Interstate Commerce Commission, made on a petition of shippers, which prayed for reparations, which order was not intended nor regarded as a final disposition of the reparation claims, and the filing of a supplemental petition, the Commission did not lose jurisdiction, and a subsequent order awarding reparations on account of shipments from a time two years prior to the filing of the original petition to the time of the final order, was within its jurisdiction.

4. **Commerce ⬤═88—Party cannot complain of order of Commission by which it benefited.**

   A carrier cannot complain of an order of the Interstate Commerce Commission, modifying a prior order to its benefit.

5. **Carriers ⬤═200—Consignor may recover for overcharge, where the freight, though paid by consignee, is charged against consignor.**

   Where freight on a commodity is paid by the consignee, who is the purchaser, but pursuant to contract is charged against the consignor as a payment on the purchase price, such payment is to be considered as originally made by the consignor, who may recover against the carrier for an overcharge.

6. **Carriers ⬤═36—Consignor held entitled to reparation for unreasonable freight rate paid.**

   Where a commodity was sold, to be delivered at destination, freight to be paid by consignee and deducted from the purchase price, a provision of the contract that consignee should have the benefit, or bear the burden, of any change in the freight rate, does not preclude the consignor from recovering reparation on account of an unjust and unreasonable rate charged, where there was no change in the rate making such provision operative.

7. **Carriers ⬤═36—Carriers jointly and severally liable for excessive joint rates charged.**

   Under Interstate Commerce Act, § 8 (Comp. St. § 8572), providing that any carrier violating the act "shall be liable to the person or persons

---

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

injured thereby for the full amount of damages sustained in consequence of any such violation," a shipper who has been charged unreasonable·and excessive rates is entitled to recover as reparation the difference between such excessive rates and the rates the Interstate Commerce Commission find would have been just and reasonable, and all carriers participating in such unlawful rates are jointly and severally liable therefor.

8. Carriers ⬅➟36—Interest may be allowed on reparations awarded.

In an order of the Interstate Commerce Commission awarding reparations, and in a judgment enforcing the award, it is permissible for the Commission and the court, in their discretion, the suit being one to recover damages for a tort to allow interest on the excess charges paid, from the date of their payment, as damages, and at a rate fixed by the Commission and the court. ·

In Error to the District Court of the United States for the Northern District of Alabama; Wm. I. Grubb, Judge. ·

Action at law by the Sloss-Sheffield Steel & Iron Company and others against the Louisville & Nashville Railroad Company and others. From the judgment, the defendant named brings·error, and the plaintiff named sues out a cross-writ. Reversed and remanded, in plaintiff's writ of error.

John S. Stone, of Birmingham, Ala., E. P. Thomas, of Montgomery, Ala., and Chas. J. Rixey, Jr., of Washington, D. C., for plaintiff in error and defendant on cross-writ.

Orla E. Harrison and Woodson P. Houghton, both of Washington, D. C., and Hugh Morrow, of Birmingham, Ala., for defendant in error and plaintiff on cross-writ.

Before WALKER and BRYAN, Circuit Judges, and CALL, District Judge.

WALKER, Circuit Judge. This was an action brought (as authorized by·section 16 of the Act to Regulate Commerce [Comp. St. § 8584]) by Sloss-Sheffield Steel & Iron Company, a corporation (herein called plaintiff), and two other corporations, against the Louisville & Nashville Railroad Company (herein called defendant), a common carrier engaged in interstate commerce, and several other such carriers, to recover the amount of reparations awarded by the Interstate Commerce Commission (herein called the Commission), by an ·order made July 12, 1921, in favor of the plaintiffs in that suit severally against the defendant and such other carriers severally. The Commission awarded to the plaintiff reparations on shipments of pig iron in carloads from its furnace in Birmingham over the lines of the defendant and its connecting carriers to Ohio river crossings and to points in Central Freight Association territory during the period from April 17, 1910, to September 16, 1915. A jury having been waived, the court made special findings of fact, based on admitted statements of facts and evidence adduced, and conclusions, with the result that by its judgment it sustained the award made by the Commission, except that it disallowed any reparation or damage for or on account of shipments that moved during the period from April 16, 1912, to July 22, 1913. The plaintiff and the defendant each sued out a writ of error, and each of them assigns as errors rulings adverse to it.

⬅➟For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The action of the Commission followed the filing with it on April 16, 1912, of a complaint by the plaintiff and several other corporations against the defendant and several other carriers engaged in interstate commerce. That complaint alleged that the complainants therein "are corporations severally engaged in the production and sale of pig iron in the several iron producing districts in the states of Alabama and Tennessee," complained of as unjust, unreasonable, and unequal, in violation of sections 1 and 3 of the Act to Regulate Commerce, the rates and charges for the transportation in carloads of pig iron from Southern producing districts in Alabama and Tennessee to Ohio and Mississippi river crossings and beyond, and to Eastern cities and interior New England points, both all rail, and rail and water, the rates and charges complained of being shown by Washburn's Joint Pig Iron Tariff No. 4, I. C. C. No. 68, effective September 20, 1910, with supplements thereto, and contained prayers that if, after hearing and inquiry, the Commission shall be of opinion that any of the rates, etc., complained of are unjust or unreasonable, or otherwise in violation of the Act to Regulate Commerce as amended, the Commission will determine and prescribe what will be just, reasonable, and equal rates, etc., to be applied to the mentioned traffic in pig iron, and—

"that the rates and charges herein complained of be found and declared to have been unjust, unreasonable, and discriminatory for a period of at least two years preceding the filing of this complaint, and that the complainants, together with those of the class represented by them, and all other shippers who may show themselves entitled, may have reparation to the extent of the difference between the rates and charges actually paid by them severally and the rates and charges that may herein be found and declared the just and reasonable maximum rates to be charged in the future."

After investigation and hearings, the Commission on June 1, 1914, made a report containing findings that the existing rates were unreasonable and that described rates would be reasonable, and the carriers were ordered to put new rates into effect. Neither that report nor the order which accompanied it dealt with the reasonableness of the rates in the past. The matter of reparations was not dealt with or mentioned by the Commission, except that the report contained the following:

"Reparation is prayed for, but under the circumstances of this case we do not believe that it may fairly be awarded."

On July 22, 1915, the plaintiff and others filed with the Commission a supplemental complaint, containing allegations as to the unreasonableness of the rates complained of before and after the date of the filing of the original complaint, and also containing more specific prayers as to reparations sought on account of shipments both prior to and subsequent to the date of the filing of the original complaint.

The action of the trial court in disallowing any reparations or damages on account of shipments that moved during the period from April 16, 1912, to July 22, 1913, was the result of the conclusions that the original complaint filed with the Commission claimed no reparations on account of shipments made after the date of the filing of that complaint, and that under the supplemental complaint filed on July 22,

1915, reparations on account of shipments made prior to that date were not allowable, except on account of shipments made within two years prior to that date. Act to Regulate Commerce, § 16 (Comp. St. § 8584). It followed from those conclusions that there was no complaint filed with the Commission under which reparations were allowable on account of shipments made during the period between the date of the filing of the original complaint and the date which was the beginning of the two years immediately preceding July 22, 1915, the date of the filing of the above-mentioned supplemental complaint.

[1, 2] We are of opinion that the just mentioned conclusions are erroneous. The Commission is an administrative body. The validity of its proceedings is not dependent upon compliance with procedural rules as to pleading and practice which prevail in courts of law. It "may conduct its proceedings in such manner as will best conduce to the proper dispatch of business and to the ends of justice." Its power to make an award of damages for a violation of the Act to Regulate Commerce may be invoked by a complaint or petition, "which shall briefly state the facts," and "be filed with the Commission within two years from the time the cause of action accrues, and not after." Sections 13, 16 (Comp. St. §§ 8581, 8584). The averments of the above-mentioned original complaint described the commodity involved, specified the rates which were complained of, showed wherein those rates were claimed to be unlawful, and that the exaction thereof caused damage to the plaintiff, and prayed reparation, as shown by the above set out prayer. The language of that prayer does not indicate the existence of an intention to claim reparation only on account of shipments made prior to the filing of the complaint. The language used is general, and broad enough to cover reparations on account of shipments made after, as well as before, the complaint was filed, and to fairly inform the Commission and the carriers proceeded against that the reparation claim asserted went that far. We conclude that the original complaint was sufficient to give the Commission jurisdiction to award reparations on account of shipments during the period covered by the above-mentioned order of July 12, 1921. Spiller v. Atchison, T. & S. F. Ry. Co., 253 U. S. 117, 40 Sup. Ct. 466, 64 L. Ed. 810; Pennsylvania R. Co. v. United States (D. C.) 288 Fed. 88; G. B. Markle Co. v. Lehigh Valley R. Co. (D. C.) 271 Fed. 989; Missouri Pacific Ry. Co. v. Ferguson Sawmill Co., 235 Fed. 474, 149 C. C. A. 20; Arcadia Mills v. Carolina, C. & O. Ry. (D. C.) 293 Fed. 639; opinion by Knapp, Circuit Judge. The following is an extract from the opinion in the last-cited case:

"If the complaint, which assails a rate as unreasonable or unjustly discriminatory, also contains such a prayer for reparation as will fairly inform the carrier of the claim made in that regard, the Commission has jurisdiction to award reparation in that proceeding for excessive rates collected during the period from two years before the complaint was filed to the date when the rate fixed by the Commission goes into effect, although its decision of the main question in favor of the shipper, which must precede any award of reparation, be not made until more than two years after the filing of the complaint, and proofs of particular shipments, showing payment of freight charges within two years from that date, are not submitted until such decision is rendered."

[3] The sufficiency of the original complaint to give the Commission jurisdiction to make its award in question was not affected by the filing on July 22, 1915, of the above-mentioned supplemental complaint. That act did not limit or qualify the jurisdiction already acquired. It was not disclosed that during the interval between the making by the Commission of its report and order of June 1, 1914, and the filing of the supplemental complaint of July 22, 1915, either the Commission or the parties to the proceeding before it regarded or treated the order of June 1, 1914, as having the effect of a final disposition of the reparation claim made by the original complaint. The question of reparations raised by that complaint was not a dormant one during that interval. On the contrary, the Commission considered that question during that interval and made an order on the subject on the same day that the above-mentioned supplemental complaint was filed, but not based on that supplemental complaint. Even if that supplemental complaint could properly be regarded as an application for a rehearing, the Commission had power to grant such rehearing, as any party to such a proceeding "may at any time make application for rehearing" of an order of the Commission, or any matter determined therein. Act to Regulate Commerce, § 16a (Comp. St. § 8585). During the period between June 1, 1914, and July 22, 1915, the plaintiff and the defendant were before the Commission in the still pending proceeding instituted by the original complaint. So far as appears, nothing occurred between the date of the filing of that complaint and the making of the order of July 12, 1921, that can properly be given the effect of terminating or interrupting the Commission's power to award reparations within the scope of the prayer in that regard of the original complaint.

[4] The court ruled against a contention of the defendant that the Commission's order of July 12, 1921, was invalid because that order changed a previously made order, and that the making of such change was in pursuance of a supplemental complaint of which the defendant had no notice or opportunity to be heard thereon. Evidence which was not subject to objections made to it showed that no new evidence was submitted to the Commission after the filing of the just mentioned supplemental complaint, that no hearing was had thereon, that the report and order of July 12 was based and made entirely upon evidence submitted to the Commission prior to the making of such previous order, and that the Commission by its order of July 12th corrected and modified such previous order only by striking out and deducting therefrom certain parts of the amounts awarded to plaintiff by such previous order. The defendant was benefited, instead of being injured, by the Commission so correcting and changing its previously made order. The defendant cannot sustain a complaint against such change or modification of the previously made order which involved only benefit to it.

[5] In behalf of the defendant it is contended that the plaintiff is not entitled to any recovery in this suit, because it sustained no damage as a result of the rates in question being excessive or unreasonable, as it did not pay or bear the freight charges on the shipments upon which reparations are sought. This contention is based upon the following facts: The plaintiff was the consignor of all the shipments on which

it was awarded reparations. The freight charges were not prepaid on any of those shipments. The pig iron embraced in those shipments was sold at a delivered price, being f. o. b. destination, under contracts containing a provision as follows:

"This price is based on present tariff freight rate of $——— per ton. In case tariff freight rate declines, the buyer is to have the benefit of such decline. In case tariff rate advances, buyer is to pay the advance. Freight cash; balance cash thirty days from average date of monthly deliveries."

At the various times when the pig iron was delivered to the purchaser at the point of destination, the purchaser paid the freight bill on the delivery of the shipment, and remitted to the plaintiff the amount of the bill for the delivered price, less the freight charges at the rate specified in the contract of sale. The plaintiff entered on its books a charge against the purchaser for the delivered price of the iron as specified in the contract, entered on its books as a credit the amount of the freight charges at the rate specified in the contract of sale, and thereupon plaintiff issued and forwarded to the purchaser an invoice which showed that the amount charged against the purchaser was the amount resulting from deducting the freight charge from the delivered price. In paying the freight charge under the circumstances mentioned, the consignee reduced to the extent of the amount of that charge the sum he was obligated to part with to get the iron delivered at its destination; such payment discharging the obligation to the carrier imposed by the shipment on the consignor alone. There is no substantial difference between a consignor paying the freight himself and bringing about the same result by getting the consignee to pay the freight as a cash installment of the price payable by the consignee for the goods delivered at their destination. The freight charge cannot well be regarded as paid or borne by a consignee, when the payment is made with money to which the consignor is entitled, and in pursuance of a contract obligation of the consignee to the consignor. As the freight was paid by the consignor's debtor, who thereby pursuant to contract, reduced his debt by the amount of the freight, such payment is to be considered as originally made by the consignor. It follows that the court did not err in ruling against the contention under consideration. Southern Pacific Co. v. Darnell-Taenzer Co., 245 U. S. 531, 38 Sup. Ct. 186, 62 L. Ed. 451.

[6] A different result is not occasioned by the stipulation giving the buyer the benefit of a decline in the freight rate if such decline occurs, and requiring the buyer to pay the advance if the rate advances. That provision was not made applicable by any change of the freight rates during the period in question. An effect of the provision was to protect the seller from loss by reason of an increase in the freight rate, the buyer in turn to get the benefit of a decline in the rate. It did not operate to keep the burden of an unchanged freight rate from falling on the seller. Whether a producer can or cannot enter a given market depends in a large measure on freight rates. His ability to compete may be impaired or destroyed as a result of other producers of the same commodity having the benefit of a more favorable freight rate. The amount of profit realized or loss sustained by a producer of a

commodity depends on the difference between what he gets for the commodity and what it costs him; such cost including freight paid when the price payable is for the commodity delivered at a place other than that of its origin. A seller is subjected to loss or damage by anything which has the effect of lessening the excess, if there is such excess, of the price received by the seller over what the commodity costs him up to the time delivery pursuant to the sale is consummated. That one engaged in such a business as that of the plaintiff is injuriously affected by the existence of unfair, excessive, and adversely discriminatory freight rates on the commodity which is the subject of that business is obvious and notorious.

[7] In behalf of the defendant it was contended that the Commission was without power to award against the defendant the whole amount of the difference between the freight charges paid by plaintiff and what it would have paid, if it had been given the rates which the Commission found would have been reasonable. We are of opinion that that contention is not sustainable. The suit was brought under section 16 of the Act to Regulate Commerce against initial carriers, to recover damages for violations of that act by such carriers exacting payment of unreasonable and excessive freight charges. The suit is one in tort. The just mentioned provision of the statute makes the findings and order of the Commission relied on prima facie evidence of the facts therein stated. By section 8 of the same act (Comp. St. § 8572) "any common carrier" subject to the provisions of that act is, for a violation thereof, made "liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation." Meeker & Co. v. Lehigh Valley R. R., 236 U. S. 412, 35 Sup. Ct. 328, 59 L. Ed. 644, Ann. Cas. 1916B, 691; Mills v. Lehigh Valley R. R., 238 U. S. 473, 35 Sup. Ct. 888, 59 L. Ed. 1414; Arcadia Mills v. Carolina, C. & O. Ry., supra. Carriers participating in joint rates which are unreasonable and excessive are jointly and severally liable to the person or persons injured by such violation of the act for the full amount of damages sustained in consequence of such violation. Central R. R. Co. v. United States, 257 U. S. 247, 259, 42 Sup. Ct. 80, 66 L. Ed. 217. The participation by the initial carriers in the violation of the act by exacting the freight rates found to be unreasonable and excessive and sharing in such rates was enough to make such carriers liable for the full amount of damages sustained by the plaintiff in consequence of such violation. The liability enforced against the defendant resulted from its unlawful act in charging excessive and unreasonable rates. That liability is enforceable against the defendant, though other parties to such rates, which were joint through rates, were also liable and were not proceeded against.

[8] The Commission's award included interest at the rate of 6 per cent. per annum on the several amounts paid in excess of what was found to be reasonable freight charges from the dates of such payments, and the court's judgment included interest at the same rate from the dates of the several payments of the several amounts in excess of reasonable freight charges which it held to be recoverable. The plaintiff contends that interest at the Alabama rate of 8 per cent. per annum

should have been allowed. The defendant contends that the action of the court with reference to interest was erroneous. The suit being one to recover damages for a tort, interest was not allowable as a matter of law. In such a case the jury, or the court, if a jury is waived, may in its discretion allow interest as damages for failure to make payment or reimbursement when it should have been made. Lincoln v. Claflin, 7 Wal. 132, 19 L. Ed. 106; Eddy v. Lafayette. 163 U. S. 456, 16 Sup. Ct. 1082, 41 L. Ed. 225; District of Columbia v. Robinson, 180 U. S. 92, 107, 21 Sup. Ct. 283, 45 L. Ed. 440. It was permissible for the Commission and the court to allow interest on the sums awarded from the dates of the payment of the freight charges found to be excessive and unreasonable, and to fix the rate of interest so allowed as damages for delay in payment. There has been no suggestion that there was an abuse of the discretion which was exercisable by the court.

The defendant takes nothing on its writ of error. Because of the above-mentioned error, the judgment is reversed on plaintiff's writ of error, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.